# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## CONCISE SUMMARY OF THE CASE

Pursuant to 3rd Cir. LAR 33.3, counsel are required to file a concise summary of the case within 14 days of the date of docketing of the Notice of Appeal. Total statement is limited to no more than 2 pages, single-spaced. Counsel may utilize this form or attach a 2 page statement encompassing the information required by this form.

SHORT CAPTION: In re: National Football League Players et al.

USCA NO.: 22-2381

LOWER COURT or AGENCY and DOCKET NUMBER:
12-md-02323, MDL No. 2323

NAME OF JUDGE: Hon. Anita Brody, U.S.D.J. (E.D. Pa.)

Specify who is suing whom, for what, and the subject of this action. Identify (1) the nature of the action; (2) the parties to this appeal; (3) the amount in controversy or other relief involved; and (4) the judgment or other action in the lower court or agency from which this action is taken:

This case arises out of the 2016 settlement from the NFL concussion litigation. The instant appeal involves the District Court's oversight of the administration of the class action settlement  The parties to this appeal are Thrivest Specialty Funding LLC nka Balanced Bridge Funding LLC ("Thrivest") and Class Counsel.

Thrivest seeks non-monetary relief, namely amendment of the Rules Governing Payment of Claims to Third-Party Funders (the "Rules") to conform to the Third Circuit's mandate from a prior appeal. The District Court denied Thrivest's motion to amend these Rules by Explanation and Order dated July 18, 2022.

**LIST and ATTACH** a copy of each order, judgment, decision or opinion which is involved in this appeal. If the order(s) or opinion(s) being appealed adopt, affirm, or otherwise refer to the report and recommendation of a magistrate judge or the decision of a bankruptcy judge, the report and recommendation or decision shall also be attached.

Explanation and Order dated July 18, 2022 (ECF No. 11770)

Nat'l Football League Players Concussion Inj. Litig., 923 F.3d 96 (3d Cir. 2019)

Provide a short statement of the factual and procedural background, which you consider important to this appeal:

In 2016, the Third Circuit approved the settlement agreement in the concussion litigation. Thrivest is a funding company that provided monetary advances to some of the potential class members on their recoveries. In a previous appeal, the Third Circuit determined that Thrivest's "contract gave it only the right to receive settlement funds after the funds are disbursed"—i.e., that Thrivest's agreement did not contain an improper assignment. See Nat'l Football League Players Concussion Inj. Litig., 923 F.3d 96, 112 (3d Cir. 2019). But at present, absent agreement under a "Resolution Protocol" adopted by the District Court, the Rules instruct the Claims Administrator to pay Monetary Awards directly to Settlement Class Members whenever there is a Third-Party Funding agreement in place, regardless of whether that agreement has been found to be improper. This outcome is not consistent with the Third Circuit's decision, nor is it consistent with the District Court's February 20, 2018 Order, which ordered payment directly to the Settlement Class Member only in the case of "improper assignments." Citing these inconsistencies and the inequity and inefficiency that has resulted from direct payment of Monetary Awards to Class Members with funding agreements in place, Thrivest moved the District Court to amend the Rules. More than one year later, the District Court denied Thrivest's motion.

Identify the issues to be raised on appeal:

1. Upon remand, is a District Court bound to follow an appellate court's mandate with regard to funding agreements in overseeing a class action settlement where the District Court has adopted rules of settlement administration affecting those funding agreements?

2. Is a court overseeing a class action settlement permitted to adopt rules of settlement administration that prejudice a funding company's ability to enforce its agreements, encourage non-compliance with those agreements, create chaos and inequity, and burden the funding company and the courts with unnecessary proceedings?

This is to certify that this Concise Summary of the Case was electronically filed with the Clerk of the U.S. Court of Appeals for the Third Circuit and a copy hereof served to each party or their counsel of record

this __17__ day of __August__, 20__22__.

_[Signature]_
Signature of Counsel

Rev. 07/2015

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## EXPLANATION AND ORDER

Before this Court is a Motion to Amend Rules Governing Payment of Claims Involving Third-Party Funders filed by Balanced Bridge Funding LLC ("Balanced Bridge"), a non-party litigation funding entity formerly known as Thrivest Specialty Funding LLC. ECF No. 11422.

Balanced Bridge seeks amendment to certain Rules Governing Payment of Claims Involving Third-Party Funders ("Payment Rules"). The Payment Rules provide that, in cases where a Class Member either (1) fails to reach a resolution with the funder through the Resolution Protocol, or (2) has entered a funding agreement with an entity not participating in the Resolution Protocol, the Claims Administrator is to disburse the Monetary Claim directly to the Class Member, from whom the funder can then seek repayment.[1] *See* Payment Rules r.6(a), 7(a). In keeping with the Third Circuit's April 26, 2019 decision regarding third-party funder agreements, "any subsequent disputes between the Settlement Class Member and any Third-Party Funders must

---

[1] The Resolution Protocol is an alternative dispute resolution process in which both funder and Class Member participation is voluntary. Rules Governing Third-Party Funding Resolution Protocol r.1, 8. The Protocol resolves funding agreement disputes between participating funders and Class Members, with an appropriate payment going directly to the funder in settlement of the funding agreement. *Id.*

be litigated or arbitrated in an appropriate forum outside the claims administration process." *Id.*; *see also In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96, 113 (3d Cir. 2019) ("Going forward, the litigation funding companies will be able to pursue, outside of the claims administration process, whatever rights they may continue to have under their cash advance agreements with class members. . . . Any questions going to the enforceability of the funding agreements will have to be litigated or arbitrated in the appropriate fora.").

Citing two examples of difficulty in collecting from Class Members, Balanced Bridge claims that the Rules are inconsistent with both the Third Circuit's decision and the Court's prior Order of February 20, 2018. Balanced Bridge's proposed solution is to amend the Rules to order the Claims Administrator to pay Monetary Awards directly to Settlement Class Members **only** (1) if the Class Member is *pro se*; or (2) if a tribunal of competent jurisdiction has already found that the Third-Party Funder's agreement constitutes an improper assignment under Section 30.1 of the Settlement Agreement. Balanced Bridge Br. at 13.

This Court has broad authority to administer the Settlement Agreement and to protect the interests of Class Members. *In re Nat'l Football League*, 923 F.3d at 108–09. In its decision, the Third Circuit "express[ed] no opinion as to the ultimate enforceability of **any** of the cash advance agreements." *In re Nat'l Football League*, 923 F.3d at 112 (emphasis added). As such, the Third Circuit did not vindicate Balanced Bridge's rights under their agreement but merely preserved Balanced Bridge's ability to assert those rights on a case-by-case basis. Furthermore, the Third Circuit makes clear that "[Balanced Bridge]'s contract gave it only the right to receive settlement funds after the funds are disbursed to a class member, and the District Court's power over the funds and the class ends at that point." *Id.* The validity of Balanced Bridge's agreements is thus a post-disbursement matter to be considered by another appropriate forum, and there is no prejudice

to Balanced Bridge in requiring it to "pursue . . . whatever rights they may continue to have under their cash advance agreements" in that way. *Id.* at 113. The Payment Rules, which direct payment of a Monetary Award to the Class Member in cases where the Resolution Protocol does not operate and advise parties of their rights to bring subsequent disputes in the appropriate independent forum, are thus consistent with both the Third Circuit's decision and the Court's February 20, 2018 Order.[2]

AND NOW, this **18th** day of **July, 2022**, it is **ORDERED** that the Motion to Amend Rules Governing Payment of Claims Involving Third-Party Funders filed by Thrivest Specialty Funding, LLC n/k/a Balanced Bridge Funding LLC (ECF No. 11422) is **DENIED**.

*S/Anita B. Brody*
ANITA B. BRODY, J.

**VIA ECF**

---

[2] The Court's Order of February 20, 2018 directs the Claims Administrator to "pay directly to the Settlement Class Member any and all Monetary Awards in cases where there has been found an improper assignment of any right or claim pursuant to Section 30.1 of the Settlement Agreement." ECF No. 9749. Although the Order was signed at a time when that determination was made within the Settlement Program, the Order does not specify how or by whom that determination is or should be made. The Third Circuit has since clarified that an independent forum—not the Court nor the Claims Administrator—must determine whether there has been an improper assignment, and that funders must vindicate their rights in an independent forum after disbursement. *In re Nat'l Football League*, 923 F.3d at 112.
  The Payment Rules do not address assignments but merely provide procedures for disbursement and thus function separately from the Court's Order of February 20, 2018. Questions of each party's rights and obligations under a funding agreement are not for this Court to regulate, and the decisions made by independent fora as to the enforceability of an individual funder's agreements are not relevant to the Court's administration of the Settlement.

3

923 F.3d 96
United States Court of Appeals, Third Circuit.

In Re: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
\*RD Legal Funding, LLC; RD Legal Finance, LLC; RD Legal Funding Partners LP; Roni Dersovitz, Appellants
\*(Pursuant to Rule 12(a) Fed. R. App. P.)
In Re: National Football League Players' Concussion Injury Litigation
\*\*Cash4Cases, Inc.; \*Atlas Legal Funding, LLC; Atlas Legal Funding I, LP; Atlas Legal Funding II, LP; Atlas Legal Funding III, LP, Appellants
\*(Pursuant to Rule 12(a) Fed. R. App. P.)
\*\*(Dismissed pursuant to the Clerk's Order dated 8/2/18.)
In Re: National Football League Players' Concussion Injury Litigation
\*Thrivest Specialty Funding, LLC, Appellant
\*(Pursuant to Rule 12(a), Fed. R. App. P.)
Thrivest Specialty Funding, LLC, Appellant
v.
William E. White

Nos. 18-1040, 18-1482
|
No. 18-1639
|
Nos. 18-2184, 18-2582
|
No. 18-3005
|
Argued January 23, 2019
|
(Filed: April 26, 2019)

**Synopsis**
**Background:** Former professional football players brought multiple actions against National Football League (NFL), alleging that NFL failed to inform them of, and protect them from, risks of concussions in football. Following approval of class settlement agreement, various class members entered into cash advance arrangements with third party litigation funders, in which they purported to assign their rights to portion of their settlement proceeds in exchange for receipt of immediate cash. The United States District Court for the Eastern District of Pennsylvania, Nos. 2-12-md-02323, 2-18-cv-01877, Anita B. Brody, J., 2017 WL 8785717, voided cash advancement agreements. Three groups of litigation funders appealed, and their appeals were consolidated.

**Holdings:** The Court of Appeals, Smith, Chief Judge, held that:

[1] litigation funders had nonparty standing to appeal from District Court's orders;

[2] District Court's order voiding cash advancement agreements was appealable under collateral order doctrine; but

[3] District Court's order directing claims administrator to disburse funds was not appealable under collateral order doctrine; and

[4] District Court exceeded its authority to enforce class settlement agreement by voiding cash advancement agreements in their entirety.

Affirmed in part, vacated in part, and remanded.

West Headnotes (16)

| [1] | Federal Courts —Compromise and settlement<br>Federal Courts —Commencement and running of time in general |
|---|---|
| | Order ruling that anti-assignment provision of class settlement agreement forbade assignment of settlement proceeds and that any such agreement was void was final, appealable order, and, thus, third-party litigation funder that had advanced cash to class members in exchange for their right to portion of settlement funds |

forfeited its right to appeal from that order by failing to file notice of appeal within 30 days, where order was clear and definite in its ruling, and its statement that funder could receive rescission in amount already paid to class members was sufficient for funder to calculate its damages with reasonable certainty. Fed. R. App. P. 4(a)(1)(A).

[2]  Federal Courts—Failure to mention or inadequacy of treatment of error in appellate briefs

Third-party litigation funder forfeited its appeal from order denying as moot motion to withhold disputed settlement funds, where it failed to brief any issue relating to that order.

[3]  Federal Courts—Persons Entitled to Seek Review or Assert Arguments; Parties; Standing

In the usual course, only parties of record have standing to appeal.

[4]  Federal Courts—Asserting claims of others

A nonparty may bring an appeal when three conditions are met: (1) the nonparty had a stake in the outcome of the proceedings that is discernible from the record; (2) the nonparty has participated in the proceedings before the district court; and (3) the equities favor the appeal.

1 Cases that cite this headnote

[5]  Federal Courts—Asserting claims of others

Third-party litigation funders had nonparty standing to appeal from District Court's orders in former professional football players' actions against National Football League (NFL), alleging that NFL failed to inform them of, and protect them from, risks of concussions in football, where they had stake in outcome of proceedings because the Court purported to void their cash advance agreements with class members, eliminating their contractual rights, and they also participated in proceedings before the Court and submitted related filings.

[6]  Federal Courts—What constitutes finality in general

In determining whether an order is final and appealable, there are circumstances when finality should be given a practical rather than a technical construction; this is especially so when supplementary post-judgment orders are involved because the policy against and the probability of avoiding piecemeal review are less likely to be decisive after judgment than before.

[7]  Federal Courts—Interlocutory and Collateral Orders

Under the collateral order doctrine, the Court of Appeals has jurisdiction to review certain decisions that do not terminate the litigation as final decisions of the district courts if they are: (1) conclusive; (2) resolve important questions completely separate from the merits; and (3) would render such important questions effectively unreviewable on appeal from final judgment in the underlying action. 28 U.S.C.A. § 1291.

[8]  Federal Courts—Compromise and settlement

District Court's order voiding assignment agreements, pursuant to which third party litigation funders advanced class members cash in exchange for their rights to portion of class settlement proceeds, was appealable under collateral order doctrine, where it bore indicia of finality in that it purported to void any assignment agreement in its entirety, fully and finally determining substantive issue of enforceability of agreements, issues presented in order were important because they involved freedom of contract and authority of the District Court, and those questions were collateral to, and completely separate from, class action merits issues. 28 U.S.C.A. § 1291.

[9]  Federal Courts—Compromise and settlement

District Court's order directing claims administrator to disburse settlement funds was not appealable under collateral order doctrine, where, as purely administrative order, it did not conclusively resolve any dispute or determine any legal issue, it did not raise important issues, and it did not affect substantive rights of parties in former professional football players' actions against National Football League (NFL), alleging that NFL failed to inform them of, and protect them from, risks of concussions in football. 28 U.S.C.A. § 1291.

1 Cases that cite this headnote

[10]  Federal Courts—Compromise and Settlement

The Court of Appeals applies plenary review to a district court's construction of settlement agreements, but should review a district court's interpretation of settlement agreements, as well as any underlying factual findings, for clear error, as it would in reviewing a district court's treatment of any other contract.

2 Cases that cite this headnote

[11]  Federal Courts—Settlements

District Court retained broad authority to administer class settlement agreement in former professional football players' actions against National Football League (NFL), alleging that NFL failed to inform them of, and protect them from, risks of concussions in football, where it expressly incorporated settlement agreement into order approving settlement, including its jurisdiction retention provision, and it also included second jurisdiction retention provision in final order.

1 Cases that cite this headnote

[12]  Federal Courts—Settlements

When parties have entered into a settlement agreement and a district court has dismissed the case, the court retains jurisdiction over issues related to the case only to the extent it has expressly retained jurisdiction or incorporated the settlement agreement into its dismissal order.

1 Cases that cite this headnote

[13]  Federal Courts—Power to Grant Relief
Federal Courts—Writs in general

Neither the All Writs Act nor rule governing class actions independently create jurisdiction, but they both allow a court to exercise some degree of control over third parties in specific circumstances. 28 U.S.C.A. § 1651; Fed. R. Civ. P. 23, 82.

[14] Compromise, Settlement, and Release.—Torts and personal injuries

> District Court exceeded its authority to enforce class settlement agreement in former professional football players' actions against National Football League (NFL), alleging that NFL failed to inform them of, and protect them from, risks of concussions in football, by voiding in their entirety third party litigation funders' cash advancement agreements with class members, although it had authority to enforce clear terms of settlement agreement by ordering that any true assignments of rights or claims relating to subject matter of class action complaint were void and unenforceable under New York law, where order was not narrowly tailored to avoid impairing obligations under portions of agreements that were not true assignments.

[15] Assignments⸺Consent of debtor

> Express language that any assignment will be void, invalid, and of no force and effect is precisely the type of clear, definite, and appropriate language that is required to void a subsequent assignment under New York law.

[16] Assignments⸺By Assignee

> An assignment purports to transfer ownership of a claim to the assignee, giving it standing to assert those rights and to sue on its own behalf.

*99 On Appeal from the United States District Court for the Eastern District of Pennsylvania, District Court Nos. 2-12-md-02323, 2-18-cv-01877, District Judge: The Honorable Anita B. Brody

**Attorneys and Law Firms**

TerriAnne Benedetto, Seeger Weiss, 1515 Market Street, Suite 1380, Philadelphia, PA 19102 Samuel Issacharoff [ARGUED], New York University Law School, 40 Washington Square South, New York, NY 10012, Diogenes P. Kekatos, Seeger Weiss, 77 Water Street, 8th Floor, New York, NY 10005, Christopher A. Seeger, Seeger Weiss, 55 Challenger Road, 6th Floor, Ridgefield Park, NJ 07660, Sol H. Weiss, Anapol Weiss, 130 North 18th Street, One Logan Square, Suite 1600, Philadelphia, PA 19103, Counsel for Plaintiff Class

Lynn B. Bayard, Bruce A. Birenboim, Brad S. Karp, Paul Weiss Rifkind Wharton & Garrison, 1285 Avenue of the Americas, New York, NY 10019, Counsel for National Football League NFL Properties

Ellen C. Brotman, Suite 1500, One South Broad Street, Philadelphia, PA 19107, Jeffrey M. Hammer, Michael D. Roth [ARGUED], David K. Willingham, Boies Schiller Flexner, 725 South Figueroa Street, 31st Floor, Los Angeles, CA 90017, Counsel for RD Legal Funding LLC, RD Legal Finance LLC, RD Legal Funding Partners LP, Roni Dersovitz

Bridget C. Giroud, Marissa R. Parker, Stradley Ronon Stevens & Young, 2005 Market Street, Suite 2600, Philadelphia, PA 19103, Raul J. Sloezen [ARGUED], 18 Hasbrouck Avenue, Emerson, NJ 07630, Counsel for Atlas Legal Funding LLC, Atlas Legal Funding I LP, Atlas Legal Funding II LP, Atlas Legal Funding III LP

Peter C. Buckley [ARGUED], Eric E. Reed, Fox Rothschild, 2000 Market Street, 20th Floor, Philadelphia, PA 19103, Counsel for Thrivest Specialty Funding LLC

Michael H. Rosenthal, Rosenthal Lurie & Broudy, 102 Pickering Way, Suite 310, Exton, PA 19341, Counsel for Andrew Stewart

Robert C. Wood, Law Offices of Robert C. Wood, 68 North High Street, Building B, Suite 202, New Albany, OH 43054, Counsel for William E. White

Before: SMITH, Chief Judge, CHAGARES, and BIBAS, Circuit Judges

OPINION OF THE COURT

SMITH, Chief Judge.

*100 This consolidated appeal involves issues tangential to the expansive National Football League (NFL) concussion injury litigation. Following approval of the settlement agreement in that class action in 2015, various class members entered into cash advance arrangements with third party litigation funders. Under the agreements relevant to the cases on appeal, class members purported to assign their rights to a portion of their settlement proceeds in exchange for receipt of immediate cash.

In December 2017, Eastern District of Pennsylvania Judge Anita Brody, who had presided over the NFL class action and retained jurisdiction while the settlement was being administered, issued an order purporting to void in their entirety all of the assignment agreements. The District Court[1] explained that its ruling was necessary to protect vulnerable class members from predatory funding companies. Appellants RD, Atlas, and Thrivest, three groups of litigation funding entities,[2] now appeal that order and other related orders entered by the District Court.

We commend Judge Brody for her very able handling throughout this extraordinarily complicated class action and settlement, and we appreciate her steadfast commitment to protecting class members' rights. In this instance, though, despite having the authority to void prohibited assignments, the District Court went too far in voiding the cash advance agreements in their entirety and voiding contractual provisions that went only to a lender's right to receive funds after the player acquired them. Accordingly, we will affirm in part and reverse in part in case 18-1040. We will dismiss cases 18-1639, 18-2582, and 18-1482 for lack of jurisdiction. We will vacate and remand in cases 18-2184 and 18-3005.

I.

In early 2012, MDL 2323 was formed to handle claims that had been filed by former professional football players against the NFL based on concussion-related injuries. *101 On May 8, 2015, the District Court entered a final order certifying a class of former NFL players and approving the parties' final settlement agreement. This Court affirmed the District Court's judgment and upheld both the settlement and the certification of the class for settlement purposes. *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016). The Supreme Court denied *certiorari* review, *Gilchrist v. Nat'l Football League*, —— U.S. ——, 137 S.Ct. 591, 196 L.Ed.2d 473 (2016); *Armstrong v. Nat'l Football League*, —— U.S. ——, 137 S.Ct. 607, 196 L.Ed.2d 473 (2016), and the settlement went into effect on January 7, 2017.

Under the settlement agreement, approximately 200,000 class members gave up their claims in exchange for potential proceeds from an uncapped settlement fund. In order to receive an award, a class member must first submit a claim package including medical records reflecting a qualifying diagnosis, among other things. The Claims Administrator then conducts a preliminary review for deficiencies, investigates the claim as appropriate, and makes a determination as to whether the class member qualifies for a monetary award. Either the class member or the NFL can then appeal the monetary award determination. Only after any appeals are completed does the Claims Administrator pay out the individual's award.

In March 2017, the claims submission process opened for class members who had been diagnosed with a qualifying illness prior to January 7, 2017. The first payouts for this group of players took place in mid-2017. Individuals without a diagnosis prior to January 7, 2017, were required to receive a diagnosis from a practitioner approved through the settlement Baseline Assessment Program (BAP). Class members could begin registering for appointments through the BAP system in June 2017. Thus, after entering into the settlement in May 2015, class members waited at least two years, and often longer, before receiving their awards.

While waiting to receive their awards, hundreds of class members entered into cash advance agreements with dozens of litigation funding companies, including the three groups of funding entities who are appellants here. Under the agreements relevant to this appeal, class members purported to "assign" their rights to a portion of their settlement proceeds in exchange for immediate cash. The amount of proceeds assigned and the cash received varied with each class member's contract. The effective interest rate, calculated by comparing the amount of money assigned with the amount of money received, also varied significantly among the contracts.

Under the agreements entered into by the Atlas entities and Thrivest, the funding companies obtained no right to

submit a claim directly to the Claims Administrator and instead acquired only the right to receive settlement funds after the Claims Administrator had paid out the awards to the particular class members with whom they contracted. Under the RD entity agreements, the funding companies purported to obtain both the right to collect directly from the Claims Administrator and the right to collect after the award was paid out to the class member.[3] Under all of the agreements relevant to this appeal, class members expressly did not assign their legal claims against the NFL, nor did the funding companies acquire the *102 right to assert legal claims. *See, e.g.,* Atlas App. 890 ("[T]he Purchaser is in no way acquiring the Seller's right to sue.").

Importantly, the May 2015 final settlement agreement included a provision under which Judge Brody broadly retained jurisdiction over administration of the settlement:

> Section 27.1 Pursuant to the Final Order and Judgment, the Court will retain continuing and exclusive jurisdiction over the Parties and their counsel, all Settlement Class Members, the Special Master, BAP Administrator, Claims Administrator, Liens Resolution Administrator, Appeals Advisory Panel, Appeals Advisory Panel Consultants, and Trustee with respect to the terms of the Settlement Agreement. Any disputes or controversies arising out of, or related to, the interpretation, implementation, administration, and enforcement of this Settlement Agreement will be made by motion to the Court. In addition, the Parties, including each Settlement Class Member, are hereby deemed to have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of, or relating to, this Settlement Agreement. The terms of the Settlement Agreement will be incorporated into the Final Order and Judgment of the Court, which will allow that Final Order and Judgment to serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to the Settlement Agreement.

The settlement agreement also included an anti-assignment provision:

> Section 30.1 No Assignment of Claims. Neither the Settlement Class nor any Class or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint. Any such assignment, or attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint will be void, invalid, and of no force and effect and the Claims Administrator shall not recognize any such action.

The District Court incorporated all of the settlement terms into its final order dismissing the case.

Following approval of the settlement, the District Court and class counsel took various steps to address cash advance agreements. In July 2016, class counsel first sent a letter to the class warning of predatory lending. The letter advised class members to avoid encumbering their settlement proceeds whenever possible. Atlas App. 1142 ("[I]f you are able to resist borrowing against any payments you might be eligible for under the Settlement, you should."). In June 2017, class counsel advised the Court that he was concerned with solicitations being sent to the class, including by high interest lenders, and received the Court's permission to send another letter to the class regarding the practice. In July 2017, Judge Brody scheduled a hearing for September 19, 2017, to address deceptive practices targeting the class, including solicitations from litigation funders.

In an entirely separate proceeding in the Southern District of New York before Judge Loretta Preska, the Consumer Financial Protection Bureau (CFPB) and the New York Attorney General challenged the business practices of the RD funding entities. In that lawsuit, the Government claimed that RD was engaging in fraudulent lending practices through certain agreements related to settlement proceeds, including agreements with NFL *103 class members. A question arose in the CFPB lawsuit as to whether the NFL settlement agreement's anti-assignment provision precluded class member assignments of settlement proceeds. Judge Preska determined that the most efficient way to resolve that issue would be to "refer" the question to Judge Brody because she had presided over the settlement negotiations and retained jurisdiction over administration of the settlement. On September 8, 2017, Judge Preska issued a referral letter alerting Judge Brody to the issue, but was careful to note that she was not transferring any portion of the case to Judge Brody.

On September 19, 2017, Judge Brody conducted the scheduled hearing concerning deceptive practices. After learning of Judge Preska's referral letter, RD participated in the hearing, but other funding companies, including Atlas and Thrivest, were not involved. Following the hearing, class counsel filed a motion requesting that any disputed portion of a class member's award be withheld pending the Court's determination of whether the cash advance agreements were enforceable. The District Court granted Thrivest objector status as to the motion to withhold, and Thrivest submitted an opposition to class

counsel's motion, arguing in part that the District Court lacked authority to adjudicate the enforceability of the third-party agreements. The Atlas entities moved to intervene and submitted opposition papers, but the Court did not grant the motion at that time, instead denying it as moot in June 2018.

On December 8, 2017, the District Court entered an order requiring class members to inform the Claims Administrator of all assignment agreements, and purporting to void all such agreements: "To the extent that any Class Member has entered into an agreement that assigned or attempted to assign any monetary claims, that agreement is void, invalid and of no force and effect." RD App. 5. The order further directed a procedure under which funding companies could accept rescission and return of the principal amount they had provided to class members by executing waivers relinquishing all rights under the agreements. The District Court noted that further instructions to the Claims Administrator would follow.³

The December 8, 2017 order did not make factual findings as to any specific agreement or the practices of any specific funding company. Instead, the District Court relied on the anti-assignment provision in the settlement agreement and its own role as a fiduciary to the class as bases for entering the expansive order. Although the December 8, 2017 order was directed broadly to all class members and all purported assignment agreements, and certainly affected the rights of all litigation funding companies that had entered into such contracts, many of the companies affected had not entered appearances or submitted any filings. Nor was any hearing conducted apart from the initial September 19, 2017 hearing. The RD entities filed a timely notice of appeal as to the December 8, 2017 order, No. 18-1040.

On February 20, 2018, the District Court ordered the Claims Administrator to disburse settlement proceeds directly to qualifying class members who had entered into assignment agreements that the Court had voided under the December 8, 2017 order. The RD entities filed a second timely *104 notice of appeal as to the February 20 order, 18-1482. Atlas filed a notice of appeal in March 2018 purporting to appeal both the February 20, 2018 order and the December 8, 2017 order, 18-1639.

On May 1, 2018, Thrivest filed a complaint to compel arbitration against class member William E. White in the Western District of Pennsylvania, pursuant to a cash advance agreement between the company and White. Thrivest also initiated arbitration with the American Arbitration Association in Philadelphia. On May 2, 2018, class counsel filed on the NFL class docket an emergency motion for a temporary restraining order to prevent Thrivest from pursuing arbitration. Judge Brody granted the motion. Following a hearing, Judge Brody entered a permanent injunction on May 22, 2018, enjoining Thrivest from arbitrating the enforcement of its assignment agreement with White. On May 29, 2018, Thrivest filed a timely notice of appeal, No. 18-2184.

On June 28, 2018, Judge Brody denied as moot the class's motion to withhold the disputed settlement funds. Thrivest filed a second notice of appeal as to that order, No. 18-2582, arguing that by denying the motion to withhold as moot, the District Court had effectively applied the December 8, 2017 and February 20, 2018 orders to Thrivest for the first time.

The Western District of Pennsylvania later transferred Thrivest's case against class member White to the Eastern District of Pennsylvania. In August 2018, Judge Brody dismissed Thrivest's separate lawsuit against White, citing her May 22, 2018 order enjoining Thrivest from pursuing arbitration. Thrivest filed a timely notice of appeal from the dismissal, No. 18-3005.⁵

## II.

Prior to reaching the merits of these appeals, we must address whether they are properly before this Court. Specifically, the consolidated appeals present jurisdictional issues of timeliness and appealability, each of which we will address in turn.

### A.

The parties agree that the RD entities timely appealed both the December 8, 2017 and February 20, 2018 orders. We agree. The class argues, however, that both the Atlas entities and Thrivest failed to timely appeal some of the orders they are challenging. We agree and will dismiss the relevant appeals.

[1] Atlas filed its notice of appeal on March 22, 2018, purporting to challenge both the District Court's December 8, 2017 order and its February 20, 2018 order. The class contends that Atlas's March 22, 2018 notice of appeal was not timely as to the December 8, 2017 order. As discussed *infra*, we conclude that the December 8, 2017 order was a final, appealable order. The order was

clear and definite in its ruling that the anti-assignment provision forbade assignment of settlement proceeds and that any agreement was "void, invalid and of no force and effect." RD App. 5. The order also specified that if the funding companies opted for rescission, they could receive "the amount already paid to the *105 Class Member," RD App. 5; we conclude that statement was sufficient for Atlas to calculate damages with reasonable certainty. See *DeJohn v. Temple Univ.*, 537 F.3d 301, 307 (3d Cir. 2008) (noting that a judgment is not final until it reasonably resolves the extent of damages). Accordingly, the Atlas entities forfeited their right to appeal the December 8, 2017 order when they failed to file a notice of appeal within thirty days of that order. See Fed. R. App. P. 4(a)(1)(A). Further, although Atlas timely filed its appeal from the February 20, 2018 order, Atlas makes no argument in its brief regarding that order and has therefore forfeited any challenge to it.[6] We will dismiss Atlas's appeal at 18-1639 in its entirety for lack of jurisdiction.

[2]As to Thrivest, there is no question that the company timely appealed Judge Brody's order enjoining it from pursuing arbitration (18-2184) and Judge Brody's order dismissing the *Thrivest v. White* case (18-3005). Thrivest also filed a notice of appeal on July 16, 2018, appealing from Judge Brody's order denying as moot the motion to withhold the disputed settlement funds. But in its briefing, Thrivest attempts to challenge not the order denying the motion to withhold, but rather the December 8, 2017 and February 20, 2018 orders. Thrivest argues that it was not until the Court's June order denying the motion to withhold that Thrivest understood the Court's previous orders to have decided the objections Thrivest raised in its November 2017 opposition. Thrivest argues that it therefore had no reason to believe, at the time those orders were entered in December 2017 and February 2018, that they affected its rights such that appeal would be necessary.

By their clear terms, the December 8, 2017 and February 20, 2018 orders applied to all assignment agreements entered into by class members, so the District Court necessarily rejected the arguments raised by Thrivest in its opposition when the Court purported to void the agreements. To the extent Thrivest attempts to appeal the denial of the motion to withhold, it failed to brief that issue and instead addressed only the December 8, 2017 and February 20, 2018 orders. Any argument as to the order denying the motion to withhold is therefore forfeited. Further, we conclude that Thrivest cannot bootstrap its arguments regarding the December 8, 2017 and February 20, 2018 final orders to its July 16, 2018 notice of appeal. Accordingly, we will dismiss as untimely Thrivest's appeal in case number 18-2582.

B.

[3] [4] [5]In the remaining cases that were timely appealed, 18-1040, 18-1482, 18-2184, and 18-3005, the appellants–litigation funders appeal four orders: (1) the December 8, 2017 order voiding the assignment agreements; (2) the February 20, 2018 order directing the Claims Administrator to disburse funds; (3) the May 22, 2018 order enjoining Thrivest from arbitrating the enforceability of its assignment agreement; and (4) the order dismissing *Thrivest v. White*, respectively. We conclude that we have appellate jurisdiction to consider appeals of the first, third, and fourth orders under 28 U.S.C. §§ 1291 and 1292,[7] but *106 that we do not have jurisdiction over the appeal of the February 20, 2018 order.

[6] [7]The December 8, 2017 and February 20, 2018 orders are not traditional "final" orders under 28 U.S.C. § 1291 because they did not terminate the litigation in the District Court. Yet there are circumstances where finality should be given a "practical rather than a technical construction." *Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.*, 998 F.2d 145, 150 (3d Cir. 1993). "[T]his is especially so when supplementary post-judgment orders are involved because the policy against and the probability of avoiding piecemeal review are less likely to be decisive after judgment than before." *Id.* (internal quotation marks omitted). Under the collateral order doctrine, we also have jurisdiction under 28 U.S.C. § 1291 to review "certain decisions that do not terminate the litigation ... as final decisions of the district courts if they are (1) conclusive, (2) resolve important questions completely separate from the merits, and (3) would render such important questions effectively unreviewable on appeal from final judgment in the underlying action." *Russell v. Richardson*, 905 F.3d 239, 253 (3d Cir. 2018) (internal quotation marks omitted).

[8]Here, the NFL concussion litigation final judgment has already been appealed to, and approved by, this Court. As a result, the District Court's post-judgment orders of December 8, 2017 and February 20, 2018 could not be appealed along with any future "final order," and there is not the usual concern of piecemeal litigation. At this point, however, our analysis of the December and February orders must diverge due to the fundamental differences between the two orders. The December 8, 2017 order bears indicia of finality—it purported to void

any assignment agreement in its entirety, leaving no additional steps for the District Court to take. As revealed by the subsequent order enjoining Thrivest from pursuing arbitration to determine the enforceability of its agreement, the District Court believes that its December order fully and finally determined that substantive issue. The issues presented by the December 8, 2017 order are also important because they involve freedom of contract and the authority of the District Court, and those questions are collateral to, and completely separate from, the NFL class action merits issues. We therefore conclude that we have jurisdiction under 28 U.S.C. § 1291 to consider RD's timely appeal of the December 8, 2017 order.

[9]As to the February 20, 2018 order, we conclude that the requisites for appeal under the collateral order doctrine are not satisfied. First, as a purely administrative order, the order did not conclusively resolve *107 any dispute or determine any legal issue, as required under the collateral order test. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) ("To come within the 'small class' of decisions excepted from the final-judgment rule by *Cohen*, the order must conclusively determine the disputed question."). Instead, the District Court's December 8, 2017 order resolved the substantive issues related to assignment agreements, and the February 20, 2018 order was merely a ministerial order designed to effectuate the Court's prior order. *See* 15B C. Wright & A. Miller, *Fed. Prac. and Proc.* § 3916 (2d ed.) ("[M]any postjudgment orders will involve ministerial or discretionary matters that are effectively unreviewable."); *see also IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1020 (2d Cir. 1975) (holding that while the order at issue "finally dispose[d]" of the award, the collateral order doctrine was not "intended to apply to the scores of discretionary administrative orders a district court must make in supervising its receiver"), *abrogated on other grounds by Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010).

Further, the February 20, 2018 order does not raise important issues, as required to satisfy the second collateral order element. There can be no question that the February 20, 2018 order is precisely the type of administrative order that the District Court plainly retained the authority to enter, as explained *infra*. And the order did not affect the substantive rights of the parties, which had already been ruled upon in the December 8, 2017 order. Instead, the order merely directed the Claims Administrator to distribute funds in a particular way. Such a discretionary, non-substantive decision by the District Court presents little for an appellate court to review, and is inappropriate for review under the narrow collateral order doctrine. We therefore conclude that we do not have appellate jurisdiction to review the February 20, 2018 order, and we will dismiss case number 18-1482.

The third order, enjoining Thrivest from arbitrating the enforceability of its assignment agreement is reviewable under 28 U.S.C. § 1292 as an order of the District Court granting an injunction. The fourth order, dismissing *Thrivest v. White*, is subject to appellate jurisdiction under 28 U.S.C. § 1291 as a traditional final order. Accordingly, we have jurisdiction to address the merits in three of the four timely appeals.

III.*

[10]On appeal, the fundamental question is whether the District Court had the authority to void the cash advance agreements. We conclude that the District Court retained broad authority to administer the settlement, but that the Court ultimately *108 exceeded its authority in voiding the agreements in their entirety.

A.

[11] [12]Where parties have entered into a settlement agreement and a district court has dismissed the case, the court retains jurisdiction over issues related to the case only to the extent it has expressly retained jurisdiction or incorporated the settlement agreement into its dismissal order. *Shaffer v. GTE N., Inc.*, 284 F.3d 500, 503 (3d Cir. 2002). Here, the District Court broadly retained jurisdiction over administration of the NFL class settlement and the class action parties. The Court expressly incorporated the settlement agreement into the order approving the settlement, including the jurisdiction retention provision. *See supra* Section I. The District Court also included a second jurisdiction retention provision in the final order:

> The Court retains continuing and exclusive jurisdiction over this action including jurisdiction over the Parties and their counsel, all Settlement Class Members, the Special Master, BAP Administrator, Claims Administrator, Lien Resolution Administrator, Appeals Advisory Panel, Appeals Advisory Panel Consultants, and Trustee. In accordance with the terms of the Settlement Agreement, the Court retains continuing and exclusive jurisdiction to interpret, implement, administer and enforce the Settlement Agreement, and

to implement and complete the claims administration and distribution process. The Court also retains continuing jurisdiction over any "qualified settlement funds," that are established under the Settlement Agreement ....

RD App. 285. As a result, the District Court retained broad jurisdiction to administer the settlement and resolve issues relating to it."

[13]Although the District Court's retention of jurisdiction applied only to the parties and other related entities expressly set out in the retention provision—and there can be no dispute that the settlement agreement was not binding on nonparties—the Court also had authority to enforce its orders under the All Writs Act, 28 U.S.C. § 1651, as well as authority to protect the class as a fiduciary under Federal Rule of Civil Procedure 23. Neither of these sources of authority independently create jurisdiction, see *Clinton v. Goldsmith*, 526 U.S. 529, 534–35, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999); Fed. R. Civ. P. 82, but they both allow a court to exercise some degree of control over third parties in specific circumstances. See *In re Grand Jury Proceedings*, 654 F.2d 268, 277 & n.14 (3d Cir. 1981) (The All Writs Act "extends to all persons who are in a position to frustrate the implementation of a court order or the proper administration *109 of justice." (internal quotation marks omitted)); Communications Among Parties, Counsel, and Class Members, Ann. Manual Complex Lit. § 21.33 (4th ed.) ("The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class.").

Specifically, under the All Writs Act, action is authorized to the extent it is "necessary or appropriate" to enforce a Court's prior orders. *See* 28 U.S.C. § 1651; *see also United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."). Or, as this Court has explained it, there is authority under the Act to issue an injunction where such relief is "necessary, or perhaps merely helpful." *Pittsburgh-Des Moines Steel Co. v. United Steelworkers of Am., AFL-CIO*, 633 F.2d 302, 307 (3d Cir. 1980). This Court has similarly clarified that any remedy under Rule 23(d) "should be restricted to the minimum necessary to correct the effects of improper conduct under Rule 23." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 310 (3d Cir. 2005); *see also Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977) ("[T]he district court must find that the showing provides a satisfactory basis for relief and that the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respective parties.").

**B.**

[14]Pursuant to the settlement agreement and the District Court order approving and adopting the agreement, the District Court retained the authority to enforce the terms of, and administer, the settlement. As noted *supra*, we have no doubt that the District Court had the authority to enter purely administrative orders such as the February 20, 2018 order directing the disbursement of funds to class members. Our analysis of the December 8, 2017 order is a bit more complicated. That order went beyond pure issues of settlement administration to adjudicate the third-party contract rights of litigation funding companies. Under the All Writs Act and Rule 23, the District Court had authority to enjoin behavior by third parties to the extent necessary to effectuate and preserve the integrity of its prior orders. The question becomes whether, to accomplish those goals, it was necessary for the District Court to void the cash advance agreements in their entirety in the December 8, 2017 order.

[15] [16]The anti-assignment provision in the NFL concussion settlement agreement is as follows:

> Section 30.1 <u>No Assignment of Claims</u>. Neither the Settlement Class nor any Class or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint. Any such assignment, or attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint will be void, invalid, and of no force and effect and the Claims Administrator shall not recognize any such action.

This provision includes express language that any assignment "will be void, invalid, *110 and of no force and effect." That is precisely the type of "clear, definite and appropriate language" that is required to void a subsequent assignment under New York law, which is the law governing the settlement agreement.'" See *Allhusen v. Caristo Constr. Corp.*, 303 N.Y. 446, 103 N.E.2d 891, 893 (1952). "An assignment purports to transfer

ownership of a claim to the assignee, giving it standing to assert those rights and to sue on its own behalf." *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 454 (3d Cir. 2018); *see also In re Stralem*, 303 A.D.2d 120, 123, 758 N.Y.S.2d 345 (2003) ("In order for an assignment to be valid, the assignor must be divested of all control over the thing assigned. When a valid assignment is made, the assignee steps into the assignor's shoes and acquires whatever rights the latter had." (internal citations and quotation marks omitted)). As a matter of New York law, we conclude that any true "assignment, or attempt to assign, ... rights or claims relating to the subject matter of the Class Action Complaint" was void *ab initio* under the anti-assignment clause.

The question then becomes whether true assignments of settlement proceeds, like those reportedly in the cash advance agreements, qualify as assignments of "rights or claims relating to the subject matter of the Class Action Complaint." The District Court found that the anti-assignment provision language applied to assignments of proceeds. This is a pure question of interpretation reviewed for clear error, *see In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000), and we identify no clear error here.[11] Accordingly, we adopt the District Court's interpretation and conclude that any true assignments contained within the cash advance agreements—that is, contractual provisions that allowed the lender to step into the shoes of the player and seek funds directly from the settlement fund—were void *ab initio*.[12]

Based on these conclusions, we also must rule that it was necessary to the District Court's enforcement of the settlement agreement, and the enforcement of its own order approving and adopting the agreement, for the Court to be able to void any true assignments. Otherwise, class members and the litigation funding companies could have undermined the District Court's order by entering into prohibited assignments in contravention of the clear terms of the settlement agreement. We will therefore affirm the District Court's December 8, 2017 order to the extent it voided any true assignments set forth in the cash advance agreements.[13]

*111 In the end, however, we must conclude that the District Court went beyond its authority when it purported to void the cash advance agreements in their entirety. The District Court explained that it was the Court's obligation as fiduciary of the class "to enforce [the anti-assignment] provision of the Settlement Agreement." RD App. 2. That is true, as far as it goes. But to accomplish that goal, the Court had the option of invalidating only the assignment portions of the agreements containing true assignments and directing the Claims Administrator not to recognize any true assignments, without voiding the agreements in their entirety. Some of the agreements contained severance clauses or alternative loan agreements, and there is a dispute as to whether the purported assignments in the funding agreements were true assignments at all.[14] Accordingly, there are portions of the cash advance agreements that may be enforceable even after any true assignments are voided. Of course, once the funds are disbursed to the players, the District Court's power over the funds—and any contracts affecting the funds—is at an end.

Further, although true assignments, which allow a litigation funding company to step into the shoes of a class member and pursue the class member's rights through the claims process, would clearly violate the anti-assignment provision and would affect the administration of the settlement, something less than a true assignment may not. For example, there is no dispute that a loan transaction between a class member and a third party is not prohibited under the terms of the settlement. And where a class member enters into a non-assignment cash advance agreement, such an agreement could be structured like a loan, which would not seem to affect administration of the settlement or violate the anti-assignment provision. The District Court's authority certainly does not extend to how class members choose to use their settlement proceeds after they are disbursed. The District Court made no findings indicating that any aspects of the cash advance agreements, other than assignments, impaired the integrity of the settlement process. As such, to the extent the District Court's December 8, 2017 order voided the cash advance agreements in their entirety, the order was not narrowly tailored to the Court's findings regarding the impact of the agreements on the settlement.[15]

*112 In sum, although the District Court had the authority to enforce the clear terms of the settlement agreement by ordering that any true assignments are void and unenforceable, the Court did not have the authority to void other obligations under the cash advance agreements, particularly without affording the lenders notice and a hearing, or making specific findings that those obligations violated the Court's prior orders or would impair the Court's administration of the settlement. We will therefore reverse in part the District Court's December 8, 2017 order. As a result, the cash advance agreements remain enforceable—outside of the NFL claims administration context—to the extent the litigation companies retain rights under the agreements after any true assignments are voided.

## C.

We express no opinion as to the ultimate enforceability of any of the cash advance agreements. We do note, though, that a court or arbitrator subsequently adjudicating these issues will need to address whether any individual agreement contains a true assignment and whether there remain enforceable rights under the agreement after any true assignment is voided. We presume that the full array of standard contract defenses will also apply in any subsequent litigation regarding these agreements. As noted by Judge Brody in her December 8, 2017 order, some of the class members are cognitively impaired, and it is possible that some of them lacked the capacity to contract at the time they entered into the agreements.[16] Judge Brody's concern is well-taken. There may also be issues of unconscionability, fraud, or usury based on the high effective interest rates in the agreements and arguments by both class counsel and the CFPB that the agreements are disguised predatory loans, rather than true assignments. Because many of the agreements contain arbitration provisions, some of these issues may ultimately be subject to arbitration. Of course, these are all questions beyond the scope of the appeal before us, and they should be litigated (or perhaps arbitrated) on a case-by-case basis in an appropriate forum.

## D.

Finally, it necessarily follows from our rulings limiting the reach of the December 8, 2017 order that the District Court exceeded its authority when it (1) enjoined Thrivest from pursuing arbitration of its rights under the cash advance agreement with class member White, and (2) dismissed Thrivest's lawsuit attempting to enforce that agreement. In entering those orders, the District Court relied on the fact that it had already invalidated the Thrivest agreement. But as we explained above, Thrivest's contract gave it only the right to receive settlement funds after the funds are disbursed to a class member, and the District Court's power over the funds and class ends at that point. *Supra* Parts I & III.B. Even if the parties had attempted to create a true assignment, we \*113 have held that the District Court did not have the authority to void Thrivest's agreement with White in its entirety. Thus it also did not have the authority to preclude Thrivest from litigating any of its remaining rights under the agreement. We therefore vacate the District Court's May 22, 2018 order enjoining Thrivest from pursuing arbitration and the Court's order dismissing Thrivest's complaint in *Thrivest v. White*, and remand for further proceedings, as appropriate.

## IV.

For the reasons given, we will reverse in part and affirm in part the District Court's December 8, 2017 order. We will reverse to the extent the District Court purported to void the cash advance agreements in their entirety and void contractual provisions that went only to a lender's right to receive funds after the player acquired them. We will affirm as to the District Court's ruling that any true assignments—contractual provisions that permit the lender to seek funds directly from the Claims Administrator—are void. We will vacate the District Court's May 22, 2018 order enjoining Thrivest from pursuing arbitration and the District Court's order dismissing Thrivest's complaint in *Thrivest v. White*, and remand for further proceedings. We will dismiss the appeals at 18-1639, 18-2582, and 18-1482 for lack of jurisdiction.

Going forward, the litigation funding companies will be able to pursue, outside of the claims administration process, whatever rights they may continue to have under their cash advance agreements with class members. We offer no opinion as to the companies' prospects for success in enforcing the funding agreements. Indeed, our opinion today should in no way suggest that an individual agreement is enforceable. Any questions going to the enforceability of the funding agreements will have to be litigated or arbitrated in the appropriate fora.

**All Citations**

923 F.3d 96

## Footnotes

| | |
|---|---|
| 1 | Unless otherwise indicated, the term "District Court" refers to the United States District Court for the Eastern District of Pennsylvania and, specifically, Judge Brody. |

2   Appellants in 18-1040 and 18-1482 are RD Legal Funding Partners, L.P.; RD Legal Finance, LLC; RD Legal Funding, LLC; and Roni Dersovitz (RD, or RD entities). Appellants in 18-1639 are Atlas Legal Funding, LLC; Atlas Legal Funding I, LP; Atlas Legal Funding II, LP; and Atlas Legal Funding III, LP (Atlas, or Atlas entities). Appellant in 18-2184, 18-2582, and 18-3005 is Thrivest Specialty Funding, LLC (Thrivest).

3   RD has since stated that it has made no attempt to collect directly from the Claims Administrator.

4   The Court did not expressly rule on the class's motion to withhold funds, but it necessarily rejected opposition arguments like those raised by Thrivest. By purporting to void the agreements, the District Court exercised authority that Thrivest argued the Court did not have.

5   Thrivest expressly limited its appeals to its agreement with class member White. See, e.g., Thrivest Reply Br. at 1 n.1 ("Thrivest refers to its dispute as with White (and not the Class or Class Counsel) because its Agreement is with White and it sought to arbitrate only with White."). Thrivest subsequently moved for a stay related to an agreement it entered into with another class member. We denied that motion in part because Thrivest had appealed only as to its agreement with White.

6   As explained *infra*, even if Atlas had not forfeited its arguments as to the February 20, 2018 order, we conclude that it is not an appealable order.

7   We also conclude that we have jurisdiction despite the fact that RD and Thrivest were non-parties to the District Court litigation. In the usual course, only parties of record have standing to appeal. *IPSCO Steel (Ala.), Inc. v. Blaine Constr. Corp.*, 371 F.3d 150, 153 (3d Cir. 2004). "[A] nonparty may bring an appeal when three conditions are met: (1) the nonparty had a stake in the outcome of the proceedings that is discernible from the record; (2) the nonparty has participated in the proceedings before the district court; and (3) the equities favor the appeal." *Id.* The RD entities entered appearances and participated in briefing in the District Court, and Thrivest was granted objector status. To the extent these litigation funding entities were not parties below, see, e.g., *Devlin v. Scardelletti*, 536 U.S. 1, 8, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002) ("Because they were not named in the action, the appellants in these cases were parties only in the sense that they were bound by the order from which they were seeking to appeal."), they nonetheless qualify for nonparty standing under our non-party appeal precedent. See *IPSCO Steel (Ala.), Inc.*, 371 F.3d at 153. Both groups of litigation funding entities have a stake in the outcome of the proceedings because the District Court purported to void their agreements with class members, eliminating their contractual rights. The companies also participated in the proceedings before the District Court and submitted related filings. The equities favor allowing the appeal because the funding companies have no way to challenge the District Court's orders, which affected their rights, apart from appealing here.

8   "This court applies plenary review to a district court's construction of settlement agreements, but should review a district court's interpretation of settlement agreements, as well as any underlying factual findings, for clear error, as it would in reviewing a district court's treatment of any other contract." *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 269 (3d Cir. 2002) (citing *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000) ("[B]asic contract principles ... apply to settlement agreements [and] ... contract interpretation is a question of fact, [thus] ... review is according to the clearly erroneous standard. In contrast, contract construction, that is, the legal operation of the contract, is a question of law mandating plenary review." (alterations in *Coltec*))). In this case, the District Court's interpretation of the settlement agreement terms is properly reviewed for clear error. The District Court's conclusion as to how the settlement agreement applies to the assignment agreements is an issue of construction that is properly reviewed de novo.

9   The litigation funding companies argue that the District Court's December 8, 2017 order was an advisory opinion because it answered a question "referred" to the Court by the Southern District of New York. This argument is meritless. As an initial matter, the District Court was already aware of the problem of the cash advance agreements and had scheduled a hearing prior to the referral letter from the Southern District of New York. Further, regardless of how the question of interpretation of the anti-assignment clause reached the District Court, it had retained the authority to adjudicate any issue related to interpretation of the settlement agreement. This retained authority originated from the underlying NFL concussion case that was the subject of the settlement agreement before the District Court, so the District Court's order simply could not have been an advisory opinion. We have no reason to express a view as to whether it would be appropriate for the Southern District of New York to rely on Judge Brody's order or adopt her rulings in the separate lawsuit before that Court.

10   The settlement agreement contains a choice of law provision specifying that the agreement "will be interpreted and enforced in

accordance with the laws of the State of New York." Settlement Agreement Section 27.1(a).

11    Even if we had concluded that the District Court's ruling regarding the settlement language was a question of construction, subject to plenary review, see *In re Cendant Corp. Prides Litig.*, 233 F.3d at 193, we would hold that the quoted language includes assignments of settlement proceeds.

12    The litigation funding companies argue that Article 9 of the New York Uniform Commercial Code bars enforcement of the anti-assignment provision. Even assuming Article 9 of the New York U.C.C. applies to a class action settlement agreement, we are not relying on that agreement here. Instead, through incorporation into the District Court's final order, the settlement agreement has itself become an order, and that order is therefore the document we must analyze. The funding companies provide no basis for invalidating a court order based on a U.C.C. provision.

13    Of course, deciding whether any specific contractual provision is a "true" assignment or a false one requires examining the language of the specific contract. In this instance, such an analysis is unnecessary in the District Court because the effect of a void true assignment and a false assignment, where the funding company has not obtained a right to submit a claim through the settlement process, is the same: the Special Master will not enforce any purported assignment.

14    *See, e.g.*, RD App. 338 (CFPB complaint in S.D.N.Y. pleading that "Although RD mischaracterizes these transactions as 'assignments,' they are in fact offers to extend credit or extensions of credit for purposes of the Consumer Financial Protection Act of 2010"); RD App. 347 (CFPB complaint in S.D.N.Y. pleading that "Although RD characterizes its contracts as 'sales and assignments,' the transactions are loans under New York law"); RD App. 566 (Class counsel noting at 9/19/17 hearing, "Although they have been disguised in some ways as an assignment of a property right ... they're really loans").

15    It is unclear whether the District Court believes it voided the agreements in their entirety and made them completely unenforceable. The express terms of the December 8, 2017 order indicate that was the Court's intent. Subsequent orders, such as the May 22, 2018 order enjoining Thrivest from pursuing arbitration, also indicate that the Court believed it had voided the agreements in their entirety. At another time, however, the District Court noted: "No judgment as to whether RD Legal is or is not ultimately entitled to money has been made by the Court." RD App. 863 n.1. Similarly, in its opposition to Thrivest's Motion for Stay Pending Appeal, the class stated that Thrivest can pursue enforcement of its funding agreement after the funds are paid to the class member: "Once Mr. Andrews is actually paid on his claim, only then will the district court's authority end and Thrivest be able to assert all its legal claims against Mr. Andrews." February 26, 2019 Thrivest Opp. at 7–8.

16    Counsel for the class conceded at oral argument that the class was not making an argument on appeal that class members lacked contractual capacity. Jan. 23, 2019 Oral Arg. Tr. 49:7–20. Of course, this concession for purposes of this appeal will not be binding against class members in subsequent litigation regarding the enforceability of the agreements.

**End of Document**                          © 2021 Thomson Reuters. No claim to original U.S. Government Works.