# United States Court of Appeals

*for the*

# Third Circuit

---

Case Nos. 22-2381

---

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS'
CONCUSSION INJURY LITIGATION

\* THRIVEST SPECIALTY FUNDING, LLC
n/k/a Balanced Bridge Funding LLC,

*Appellant.*

\*(Pursuant to Rule 12(a), Fed. R. App. P.)

---

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA IN CASE NO. 2-12-MD-02323
HONORABLE ANITA B. BRODY, U.S. DISTRICT JUDGE

## BRIEF FOR CLASS PLAINTIFFS-APPELLEES

CHRISTOPHER A. SEEGER
DIOGENES P. KEKATOS
SEEGER WEISS LLP
55 Challenger Road
Ridgefield Park, New Jersey 07660
(973) 639-9100

SCOTT A. GEORGE
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, Pennsylvania 19102
(215) 564-2300

*Class Counsel and Attorneys for Class Plaintiffs-Appellees*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ........................................................................1

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION ........................................................................6

STATEMENT OF THE ISSUES ..........................................................7

RELATED CASES AND PROCEEDINGS ...............................................7

STATEMENT OF THE CASE ............................................................8

    A.    The Underlying Litigation ......................................................8

    B.    Litigation Over Putative Assignments of Monetary
        Awards ......................................................................10

    C.    The Assignment-Related Appeals to This Court .................14

    D.    The Aftermath of This Court's 2019 Decision .......................17

    E.    The Currently Operative Third-Party Funder Rules...........22

    F.    Thrivest's Motion to Amend the Third-Party Funder
        Rules and Second Mandamus Petition ................................24

    G.    The District Court's Decision ................................................25

SUMMARY OF ARGUMENT ...........................................................27

STANDARD OF REVIEW.................................................................28

ARGUMENT ...............................................................................30

A.    The Third-Party Funder Rules Do Not Treat Funders' Cash Advances as Presumed Assignments ........................... 30

B.    That Thrivest Would Experience Less Inconvenience if Monetary Awards Are Not Paid Directly to Class Members Does Not Mean That the Third-Party Funder Rules Fail to Comport with This Court's Decision ............... 36

C.    The District Court Has Aided, Not Impeded, Thrivest's Efforts to Secure Repayment from Recalcitrant Class Member Borrowers ................................................................. 39

CONCLUSION ....................................................................... 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. National Football League,*
137 S. Ct. 607 (2016)..................................................................9

*Balanced Bridge Funding, LLC v. Harper,*
No. 20-6525, 2021 WL 3027018 (E.D. Pa. Feb. 23, 2021) ...................41

*Bankers Trust Company v. Bethlehem Steel Corporation,*
761 F.2d 943 (3d Cir. 1985)......................................................31

*Coltec Industries, Inc. v. Hobgood,*
280 F.3d 262 (3d Cir. 2002)......................................................28

*Digital Equipment Corporation v. Desktop Direct, Inc.,*
511 U.S. 863 (1994)..................................................................7

*Exxon Chemical Patents, Inc. v. Lubrizol Corporation,*
137 F.3d 1475 (Fed. Cir. 1998) ................................................36

*Gilchrist v. National Football League,*
137 S. Ct. 591 (2016)................................................................9

*Habecker v. Clark Equipment Co.,*
942 F.2d 210 (3d Cir. 1991) ....................................................31

*In re Chambers Development Company, Inc.,*
148 F.3d 214 (3d Cir. 1998) ....................................................31

*In re Diet Drugs (Phentermmine/Fenfluramine/Dexfenfluramine)
Products Liability Litigation,*
706 F.3d 217 (3d Cir. 2013) ....................................................28

*In re Diet Drugs (Phentermmine/Fenfluramine/Dexfenfluramine)
Products Liability Litigation,*
543 F.3d 179 (3d Cir. 2008) ....................................................29

*In re McGraw-Hill Global Education Holdings, LLC*,
  909 F.3d 48 (3d Cir. 2018) ......................................................31

*In re Minor*,
  482 B.R. 80 (Bankr. W.D.N.Y. 2012) ...................................11

*In re National Football League Players' Concussion Injury
  Litigation*,
  923 F.3d 96 (3d Cir. 2019) ..........................................*passim*

*In re National Football League Players Concussion Injury
  Litigation*,
  821 F.3d 410 (3d Cir. 2016). .........................................8, 9, 10

*In re National Football League Players' Concussion Injury
  Litigation*,
  307 F.R.D. 351 (E.D. Pa. 2015), *aff'd*, 821 F.3d
  410 (3d Cir. 2016)..........................................................8, 9, 10

*In re Nutraquest, Inc.*,
  434 F.3d 639 (3d Cir. 2006) ..................................................29

*In re Zoloft (Sertraline Hydrochloride) Products
  Liability Litigation*,
  858 F.3d 787 (3d Cir. 2017)..................................................29

*Richardson-Merrell, Inc. v. Koller*,
  472 U.S. 424 (1985)...............................................................7

*Russell v. Richardson*,
  905 F.3d 239 (3d Cir. 2018) ..................................................6

*Sprague v. Ticonic National Bank*,
  307 U.S. 161 (1939)..............................................................31

## Statutes

28 U.S.C. § 1291.............................................................................6, 7

28 U.S.C. § 1332(d)(2)(A)...................................................................6

## Rules

Sup. Ct. R. 44(2)...............................................................................9

## Other Authorities

Adam Shajnfeld, *A Critical Survey of the Law, Ethics, and
    Economics of Attorney Contingent Fee Arrangements*,
    54 N.Y.L. Sch. L. Rev. 773 (2010) .......................................11

# INTRODUCTION

After two unsuccessful bids at obtaining mandamus relief, Appellant Thrivest Specialty Funding LLC n/k/a Balanced Bridge Funding ("Thrivest")[1] has filed this latest appeal. Specifically, Thrivest challenges the July 18, 2022 Explanation and Order ("Order") (reported at 2022 WL 3138705) of the United States District Court for the Eastern District of Pennsylvania (Hon. Anita B. Brody, *J.*), denying its motion to amend the Rules Governing Payment of Claims Involving Third-Party Funders ("Third-Party Funder Rules" or "Rules"). 1JA1-3 (decision); *see* 3JA786-93 (Rules).[2] The Rules, the current version of which was adopted in 2020, govern the payment of Monetary Awards under the class action settlement ("Settlement" or "Settlement Agreement") in the multidistrict *National Football League Players' Concussion Injury Litigation* ("*NFL*

---

[1] In the decision that is the subject of this appeal, the district court referred to Appellant by its current incarnation. For the sake of consistency and to avoid confusion, this brief refers to Appellant throughout as Thrivest, the name under which it litigated before the district court and this Court during most of the 2017-22 period.

[2] "JA" denotes references to pages of the Joint Appendix, with the number preceding "JA" denoting the volume number. "Br." denotes references to pages of the Brief of Appellant Thrivest Specialty Funding, LLC n/k/a Balanced Bridge Funding, LLC (ECF No. 21). Except where otherwise noted, "ECF No." refers to docketing filings in the court below.

*Players' Concussion*") in cases where a third-party funder such as Thrivest has made a cash advance to a member of the plaintiff settlement class ("Class") based on the Class member's anticipated Monetary Award under the Settlement.

As this Court made clear in addressing purported assignments of Monetary Awards under the Settlement, "the District Court retained broad authority to administer the settlement," including the authority to invalidate any putative assignments. *NFL Players' Concussion*, 923 F.3d 96, 109-10 (3d Cir. 2019).

To be sure, the Court held that the district court's prohibition of putative assignments did not mean that third-party funders' cash advance agreements were void in their entirety, and therefore funders who were putatively assigned Class members' Monetary Awards (or portions thereof) were not categorically foreclosed from pursuing recovery against Class member borrowers. *Id.* at 112-13. Under this Court's decision, a funder's efforts to enforce a cash advance agreement could be asserted as a matter of individual contract and subject to the full range of defenses, including "whether any individual agreement contains a true assignment and whether there remain [any] enforceable rights ...

after any true assignment is voided," as well as lack of capacity to contract, unconscionability, fraud, or usury. *Id*. at 112.

The Court noted tha, "[b]ecause many of the agreements contain arbitration provisions, some of these issues may ultimately be subject to arbitration," and that therefore these questions "should be litigated (or perhaps arbitrated) *on a case-by-case basis in an appropriate forum*." *Id*. (emphasis added). Importantly, with respect to the ultimate resolution of third-party lenders' claims against their borrowers, the Court stated that it "express[ed] *no* opinion as to the ultimate enforceability of *any* of the cash advance agreements." *Id*. (emphasis added).

The district court has faithfully and fully followed the Court's mandate from that opinion. In a Notice issued on September 27, 2019, in the wake of Thrivest's first mandamus petition, the district court summarized this Court's mandate, and concluded that "[t]he import of the Third Circuit['s] Decision is clear: the [District] Court has the authority to prohibit the Claims Administrator from paying third-party funders directly from the Settlement Fund, but the overall enforceability of any third-party funder agreements must be litigated or arbitrated outside of the claims administration context. The [District] Court and

Claims Administrator have followed the Third Circuit's holding." 3JA752
(¶ 4).

The current Third-Party Funder Rules were promulgated by the
Claims Administrator in March 2020, and establish the process for the
payment of claims involving third-party funders such as Thrivest. These
Rules expressly acknowledge this Court's April 2019 decision, making
clear that the validity of such funding agreements will be made *outside*
of the Settlement Program's claims administration context, leaving that
question to be decided in an appropriate forum, whether judicial or
arbitral. As revised, these Rules explicitly caution Class members that
direct payment to them of their Monetary Awards does *not* absolve them
of legal obligations to funders who may have made cash advances to them
on their awards, and specifically warn Class members who are
represented by individual counsel that they should *not* assume that their
counsel have paid off obligations to third-party lenders.

In addition to the reworking of the administrative payment rules to
comport with this Court's decision, the district court has acceded to
Thrivest's requests for enforcement of arbitrators' awards, even resorting
to its contempt power in the case of one recalcitrant Class member who

flouted an order requiring him to escrow funds pending an arbitrator's final decision.

But Thrivest is not satisfied with that. It now wants this Court to overturn the district court's refusal to *further* modify the Rules so that Class members represented by individual counsel never "touch" any award monies that they may owe to lenders who advanced them funds. Nowhere in its decision, however, did this Court suggest that the district court must ensure that Class members with cash advance agreements are never paid directly.

Thrivest's demand for such judicial micromanagement of the Settlement Program is unwarranted. The district court acted well within the parameters set by this Court's remand in declining to further rewrite the Rules to best suit Thrivest's repayment efforts. Thrivest should not be allowed to secure through the back door—i.e., a judicial rewriting of the Rules to have Monetary Awards channeled away from Class members—what it and other funders could not gain through the front door (namely, the structuring of agreements to confer ownership of borrowers' Monetary Awards or portions thereof on funders). The Court should accordingly affirm the district court's decision.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court had subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(d)(2)(A) because the case is a class action in which the amount in controversy exceeds $5 million, exclusive of interest and costs, and at least one member of the Class is a citizen of a state different from one of the defendants, and because of the district court's retained and continuing jurisdiction over the implementation of the Settlement Agreement, out of which this dispute arose. *See* ECF No. 6534 at 7 (Am. Final Order & J., at ¶ 17); 2JA367 (docket entry); *NFL Players' Concussion*, 923 F.3d at 102, 108 (noting Settlement's jurisdiction-retention provision, incorporated into final approval order).

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the Order that is the subject of Thrivest's appeal qualifies under the collateral order doctrine. Although it did not terminate the litigation below, the Order (i) conclusively resolved the disputed question, (ii) resolved an important question completely separate from the merits of *NFL Players' Concussion*, and (iii) would be effectively unreviewable on appeal from a final judgment in *NFL Players' Concussion*. *See Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 431 (1985); *NFL Players'*

*Concussion*, 923 F.3d at 106 (exercising collateral order jurisdiction under 28 U.S.C. § 1291 to review district court's order invalidating assignments of Monetary Awards); *Russell v. Richardson*, 905 F.3d 239, 253 (3d Cir. 2018) (citing *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 865, 867 (1994)).

## STATEMENT OF THE ISSUES

The two issues presented in this appeal are:

1.    Whether the district court has faithfully adhered to this Court's April 26, 2019 decision respecting third-party funders' freedom, save with respect to prohibited assignments of Monetary Awards, to enforce their cash advance agreements with Class members in judicial or arbitral forums.  1JA1-3; 3JA751-53, 786-93.

2.    Whether the district court acted within its discretion in declining to further revise Monetary Award payment Rules adopted in 2020, which employ no presumption regarding the validity of cash advance agreements, solely to best facilitate third-party funders' collection efforts.  1JA1-3; 3JA786-93.

## RELATED CASES AND PROCEEDINGS

As noted in the Introduction, this appeal is an outgrowth of the nationwide class action Settlement, whose final approval by the district

court this Court affirmed in April 2016, *NFL Players' Concussion*, 821 F.3d 410, 420-48 (3d Cir. 2016), *aff'g*, 307 F.R.D. 351, 361-423 (E.D. Pa. 2015), and the district court's December 2017 decision (3JA744-49), invalidating putative assignments of Monetary Awards to third-party funders, which this Court affirmed in part and vacated and remanded in part in April 2019, *NFL Players' Concussion*, 923 F.3d at 107-13.

Since the Court's April 2019 decision, Thrivest has been before this Court twice on mandamus petitions relating to its efforts to rewrite the district court's Monetary Award payment rules where third-party funders such as itself have made loan advances to Class members, which this Court denied without prejudice on October 31, 2019, *In re Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. Oct. 31, 2019) (Doc. No. 003113392583), and again on January 3, 2022, *In re Thrivest Specialty Funding LLC*, No. 21-3238 (3d Cir. Jan. 3, 2022) (ECF No. 9-1).

## STATEMENT OF THE CASE

### A.    The Underlying Litigation

Over six years ago, this Court upheld the district court's approval of the historic Settlement, which provides compensation for the pervasive neurocognitive and neuromuscular injuries resulting from a career in professional football. *NFL Players' Concussion*, 821 F.3d at 436-48. This

Court's and the district court's respective decisions lay out the litigation's history, the settlement approval proceedings, and the Settlement's components. *See id.* at 421-25; *NFL Players' Concussion*, 307 F.R.D. at 361-70. The Settlement became effective on January 7, 2017.[3]

As is relevant here, and as the Court is well aware by now from various appeals that have come before it, the Settlement provides an uncapped Monetary Award Fund that furnishes compensation of up $5 million to retired National Football League player Class members who demonstrate one of a defined category of Qualifying Diagnoses of neurocognitive and neuromuscular ailments. These include Alzheimer's Disease, certain levels of neurocognitive impairment, Parkinson's Disease, and Amyotrophic Lateral Sclerosis. *See generally NFL Players'*

---

[3] The Settlement Agreement (ECF No. 6481-1) (3JA363 (docket entry)) received final approval on April 22, 2015 from the district court, whose decision this Court affirmed on April 18, 2016. *See NFL Players' Concussion*, 821 F.3d at 420-48, *aff'g*, 307 F.R.D. at 361-423. By its terms, the Settlement became effective on January 7, 2017, following the expiration of the time to seek rehearing of the Supreme Court's December 12, 2016 denial of two certiorari petitions challenging this Court's April 18, 2016 decision. *See* Settlement § 2.1(jj), ECF No. 6481-1 at 12-13 (Effective Date is date "that no future appeal is possible"); Sup. Ct. R. 44(2) (25-day deadline to file petition for rehearing of certiorari denial); *Armstrong v. NFL*, 137 S. Ct. 607 (2016) (denying certiorari); *Gilchrist v. NFL*, 137 S. Ct. 591 (2016) (same).

*Concussion*, 307 F.R.D. at 366-68, *aff'd*, 821 F.3d at 423-24; ECF No. 6481-1 at 35-42, 106-10 (Settlement Agreement art. VI & Ex. A-1); 2JA363 (docket entry).  As of October 10, 2022, 1,383 Monetary Awards, totaling over $925 million, have already been paid, with Notices of Monetary Awards totaling over $1 billion.  ECF No. 11882 at 5-7 (Claims Admr's Status Report No. 18); 3JA741 (docket entry).

## B.    Litigation Over Putative Assignments of Monetary Awards

Soon after the dust settled on the Settlement approval proceedings and the Settlement became effective, it became clear that a number of third-party funders, sensing a lucrative opportunity, had descended on the Class even as the final touches were being put on the Settlement. They made cash advances to Class members prospectively eligible for Monetary Awards.  In order to circumvent state usury laws, these entities packaged these loans as purchases or partial purchases of the borrowers' awards. *E.g.*, ECF Nos. 8301-5 at 4 (Aff. ¶¶ 2-5), 8301-9, 8301-10 ("Assignment and Sale Agreement[s]," whereby funder agreed to pay

Class members for portions of anticipated Monetary Awards, typically for around 50% of portion being purchased); 2JA484 (docket entries).[4]

In February 2017, the federal Consumer Financial Protection Bureau ("CFPB") and the New York State Attorney General ("NYAG") jointly sued one such funder—RD Legal Finance LLC, its principal, and affiliates (collectively, "RD Legal")—in the Southern District of New York, charging it with violations of the federal Consumer Financial Protection Act and sundry New York state statutes stemming from, in relevant part, the putative assignment of portions of Monetary Awards

---

[4] Thrivest's contention that its agreements do not run afoul of state usury laws because there is no absolute right to repayment (Br. at 25) is unavailing. The fact is that various funders *packaged* their cash advance agreements as non-recourse purchase and sale agreements instead of full-recourse loans to end run usury laws. *See* Adam Shajnfeld, *A Critical Survey of the Law, Ethics, and Economics of Attorney Contingent Fee Arrangements*, 54 N.Y.L. Sch. L. Rev. 773, 801 (2010) ("The atypical, assignment-like lenders … make the obligation to repay contingent upon recovery and not absolute in order to circumvent prohibitions on usury.") (footnote omitted); *cf. In re Minor*, 482 B.R. 80, 83 (Bankr. W.D.N.Y. 2012) ("In order to avoid a claim of usury, PSF structured the agreements not as loans, but as investments providing a contingent right of repayment that would arise only in the event of a recovery on account of the personal injury."). At least one of Thrivest's own agreements was so packaged. *See infra* at 33 n.12. Tellingly, Thrivest sidesteps the question of whether, had funders' agreements *not* been so packaged, repayment would typically have been without recourse.

by several Class members to RD Legal.    ECF No. 8301-3 (S.D.N.Y.

complaint); 2JA484 (docket entry).

Concerned that a judicial validation of the putative assignments to

RD Legal would have repercussions for the entire Class and expose many

of its members to similar predatory practices,[5] Class Counsel sought

leave to file an amicus curiae brief in the Southern District of New York

action on the issue of whether the Settlement prohibits assignments of

Monetary Awards.    In the alternative, Class Counsel proposed that the

issue be referred to the district court for resolution given that it had

ramifications for the entire Settlement.    Letter motion and proposed

memorandum, *CFPB v. RD Legal Funding, LLC*, No. 1:17-CV-00890-

LAP (S.D.N.Y. July 25, 2017) (ECF Nos. 45, 45-1).    After consultation,

the judge presiding over the CFPB's and NYAG's suit referred the

assignability issue to the district court.    Order, *CFPB v. RD Legal

Funding, LLC*, No. 1:17-CV-00890-LAP (S.D.N.Y. Sept. 8, 2017) (ECF

No. 59).    Thereafter, the district court adopted a schedule for the briefing

---

[5] Many Class members suffer from neurocognitive impairments; are
in many cases of advanced age (having last played in the NFL long ago);
are in difficult financial straits; or are affected by some combination of
these circumstances—factors that render them extremely vulnerable to
manipulation by predatory lenders.

of that issue.  *See* ECF No. 8409 (order); *see also* ECF No. 8380 (schedule proposed by parties pursuant to S.D.N.Y. judge's referral order); 2 JA493, 495 (docket entries).

Following that briefing (ECF Nos. 8434-35, 8438, 8457-59; *see also* 2JA497, 499 (docket entries)), the district court issued an Explanation and Order on December 8, 2017 (3JA744-49, reported at 2017 WL 8785717).  Judge Brody held that the language in Section 30.1 of the Settlement ("the Anti-Assignment Provision") barring assignments "relating to the subject matter of the Class Action Complaint" extends to "the allegations that directly produced the Settlement Agreement and its monetary claim structure," and thus "unambiguously" prohibits the assignment of Monetary Award claims.  3JA746-47.[6]

---

[6] The Anti-Assignment Provision states:

> <u>No Assignment of Claims</u>. Neither the Settlement Class nor any Class or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint. Any such assignment, or attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint will be void, invalid, and of no force and effect and the Claims Administrator shall not recognize any such action.

The district court accordingly declared all putative assignments of Monetary Awards "void, invalid and of no force and effect," and directed the Claims Administrator to obtain a verified response from every Class member eligible for a Monetary Award as to whether that member had made an assignment of his award.   3JA748.

On February 20, 2018, the district court issued a follow-up order, directing the Claims Administrator to "pay directly to the Settlement Class Member any and all Monetary Awards in cases where there has been found an improper assignment of any right or claim pursuant to Section 30.1 of the Settlement Agreement."  3JA750.

## C.    The Assignment-Related Appeals to This Court

Following briefing and argument of a slew of appeals taken by RD Legal and other funders from either or both of the district court's orders (ECF Nos. 9559, 9755, 9794 (notices of appeal); 3JA559, 574-75, 578 (docket entries))—as well as by Thrivest from the district court's May 22, 2018 order enjoining an arbitration it had commenced against Class member William White, in which Thrivest sought enforcement of its cash

---

ECF No. 6481-1 at 96; 2JA363 (docket entry).

advance agreement (ECF No. 10027 (notice of appeal); *see* ECF Nos. 9924 (Class Counsel's motion to enjoin arbitration), 10011 (order); 3JA588, 596-97 (docket entries))[7]—this Court issued an opinion on April 26, 2019, affirming the district court's decision in part and vacating and remanding it in part. *NFL Players' Concussion*, 923 F.3d at 107-13.

After first addressing which of the appeals were properly before it, *id.* at 104-07, the Court noted that, pursuant to the express terms of the Settlement and the Final Order and Judgment, "the District Court retained broad jurisdiction to administer the settlement and resolve issues relating to it," and it held that the All Writs Act allowed the district court to exercise that authority vis-à-vis third parties such as the funders. *Id.* at 108-09. The Court further held that there was no clear

---

[7] Thrivest also appealed (1) the district court's June 28, 2018 denials, on mootness grounds, of (a) Class Counsel's motion for an order directing the Claims Administrator to withhold any portions of Monetary Awards purportedly owed to certain third-party lenders, and (b) several funders' intervention motions (ECF No. 10141 (notice of appeal); *see* ECF Nos. 8470 (motion), 10124 (order); 2JA500, 3JA605, 607 (docket entries)); and (2) the district court's August 30, 2018 dismissal of an action that Thrivest had commenced in the Western District of Pennsylvania (subsequently transferred to the district court) against Class member White to compel arbitration. *See Thrivest Specialty Funding v. White*, No. 2:18-cv-01877-AB (E.D. Pa. Aug. 30 and Sept. 7, 2018) (ECF Nos. 13-14) (order and notice of appeal); 3JA803-04 (docket entries).

error in the district court's finding that the Anti-Assignment Provision applied to assignments of Monetary Awards, which was "a pure question of interpretation," and it accordingly upheld the district court's reading, concluding that "any true assignments contained within the cash advance agreements—that is, contractual provisions that allowed the lender to step into the shoes of the player and seek funds directly from the settlement fund—were void *ab initio.*" *Id.* at 110 (footnote omitted).

At the same time, though, while commending the district court for its "very able handling throughout this extraordinarily complicated class action and settlement," and "appreciate[ing] [its] steadfast commitment to protecting class members' rights," the Court held that the district court had exceeded its authority by voiding other obligations under the cash advance agreements, including arbitration provisions. *Id.* at 100, 111-12. The Court noted that a court or arbitrator presented with an enforcement action by a funder would "need to address whether any individual agreement contains a true assignment and whether there remain enforceable rights under the agreement after any true assignment is voided," and it also vacated the district court's order

enjoining Thrivest from pursuing arbitration against Class member White. *Id.* at 112-13.

The Court "in no way suggest[ed] that an[y] individual agreement is enforceable," and "presume[d] that the full array of standard contract defenses will also apply in any subsequent litigation regarding these agreements." *Id.* Recognizing that some Class members are cognitively impaired, the Court stated that it was "possible that some of them lacked the capacity to contract at the time they entered into the agreements." *Id.* at 112. Adding that funders could pursue, "outside of the NFL claims administration context," whatever rights they have under their agreements with Class members, the Court concluded that a determination of enforceability would have to be made in the appropriate forum. *Id.*

## D.    The Aftermath of This Court's 2019 Decision

Under the process that the Claims Administrator had originally established to implement the district court's December 8, 2017 decision, Class members provided any funding agreements they had entered into with third-party funders to the Claims Administrator, who determined, in consultation with the Special Masters, whether the funding agreement

was a prohibited assignment. *See* 3JA929 (Decl. ¶ 3). If it was, the Claims Administrator issued a notice to the Class member, advising him of the determination and his rights. *Id.* Subsequently, a Resolution Protocol was established, whereby willing funders and Class members could resolve any claims for payment of disputed funding agreements, with an appropriate payment being made directly to the funder out of the Class member's Monetary Award. *Id.*

A striking fact arising from the Claims Administrator's review of the many cash advance agreements—most of which turned out to be in the form of prohibited assignments—was that the Class members who had entered into such agreements were typically represented by individual counsel who either were less than diligent in reviewing the Settlement Agreement (including its Anti-Assignment Provision) for their clients or were themselves complicit in their clients entering into funders' purchase of assignments of Monetary Award claims. *See* 3JA930 (Decl. ¶ 4).[8] In either event, such counsel would not seek to void

---

[8] One unscrupulous attorney (since disbarred by the Supreme Court of Florida) undertook a scheme to steer his Class member clients into funding agreements (which were later determined to be prohibited assignments) and then used the promised proceeds from those funding

prohibited funding agreements if the funder pursued collection efforts. *Id.*

Accordingly, in its February 20, 2018 follow-up order, the district court had directed that the Claims Administrator pay Class members' Monetary Award directly to them "in cases where there has been found an improper assignment." 3JA750. Of course, this directive, which was incorporated in the former Rules Governing Assignment of Claims (3JA1009-13),[9] assumed that the nature of the funding agreements would

---

agreements to establish a retirement investment fund (through an entity that he controlled) for other clients—which scheme later collapsed, taking with it many Class members' life savings. *See*, *e.g.,* ECF Nos. 9578, 9750, 9974, 10078, 11340, 11344, 11768 (Class Counsel's motions, former attorney's unsuccessful efforts to disqualify Special Masters and auditors investigating him, and related orders); 3JA562, 574-74, 592, 600, 705-06 (docket entries).

[9] Those rules were amended on May 13, 2019, shortly after this Court's decision. 3JA929-30 (Decl. ¶ 3). In March 2020, they were replaced by the currently governing Third-Party Funder Rules. *See* Section E, *infra*; https://www.nflconcussionsettlement.com/Docs/alert_third_party_funder_rules.pdf (Mar. 19, 2020 announcement, "New Rules Regarding Payment of Claims and Third-Party Funders," posted on "Alerts" page of Settlement Program's official website). A copy of the Rules was appended to Thrivest's motion (3JA786-93), whose denial forms the basis of this appeal. *See* Sections F-G, *infra*. They are posted on the "Governing Rules" page of the Settlement Program's official website. *See* https://www.nflconcussionsettlement.com/Docs/rules_governing_payment_of_claims.pdf (last visited Nov. 7, 2022).

be made within the Settlement Program (as contemplated by the district court's December 2017 decision) and payment made directly to the Class member only when a funding agreement was determined to be a prohibited assignment (and resort to the Resolution Protocol was not agreed to).

Less than five months after the Court's decision, Thrivest filed its first petition to this Court for mandamus relief, seeking to have it direct the district court to amend the then-operative Rules Governing Assignment of Claims. Thrivest contended that those rules were at odds with this Court's decision and were hampering its collection efforts. Pet. for Writ of Mandamus at 2-4, 11, *In re Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. Sept. 20, 2019) (Doc. No. 003113353785). In particular, Thrivest challenged the Claims Administrator's continued review of funding agreements entered into by Class members, along with the subsequent notice that the Claims Administrator was providing to those Class members about the possible nature of these funding agreements and their rights under the Anti-Assignment Provision. *Id.* at 5-6.

"In light of the concern expressed in [Thrivest's] mandamus petition," the district court issued a Notice "clarif[ying] … the legal status of third-party funder agreements." 3JA751. Judge Brody directed "the Claims Administrator to review its guidance and rules regarding third-party funder agreements and propose a streamlined and concise version that is more user-friendly." 3JA753.

Class Counsel advised this Court of the district court's Notice and maintained that the district court was in compliance with the Court's decision. 3JA937-39, 951-53. In particular, Class Counsel explained that final determination of the enforceability of funding agreements, including under Section 30.1 of the Settlement Agreement, was left to be made outside of the Settlement Program—and, where funding agreements contain an arbitration provision, by arbitrators hearing any collection action initiated by third-party funders—not the Claims Administrator or the district court. *See* 3JA937.

Also, as specifically concerned Thrivest's enforcement efforts against class member White (one of the subjects of this Court's April 2019 decision), Class Counsel noted that the district court had faithfully adhered to this Court's decision by granting Thrivest's emergency motion

21

to confirm an interim arbitration award, directing White to escrow money pending resolution of the arbitration (while denying White's motion to vacate that interim award), and subsequently by scheduling a civil contempt hearing after White failed to comply with its order. 3JA938-39. On October 31, 2019, this Court denied Thrivest's mandamus petition without prejudice. *In re Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. Oct. 31, 2019) (Doc. No. 003113392583).

## E.    The Currently Operative Third-Party Funder Rules

Under the Third-Party Funder Rules that were issued in March 2020 in accordance with the district court's Notice and are now in effect (3JA786-93), the Claims Administrator no longer passes on the legality of funding agreements and Class members no longer receive a notice of the rights they might enjoy under Section 30.1 of the Settlement Agreement. 3JA930 (Decl. ¶ 5). The Third-Party Funder Rules, though, still afford Class members protections. Because there is no longer an initial determination made as to the nature of any particular funding agreement, whenever a Class member discloses a cash advance agreement of any kind and the Resolution Protocol is not pursued, payment is made directly to the Class member. 3JA931 (Decl. ¶ 6). This

protects Class members whose counsel have often showed themselves to be less than zealous in guarding their clients' interests when it comes to cash advance agreements structured as prohibited assignment and sale agreements.

At the same time, however, the Third-Party Funder Rules unambiguously and emphatically caution Class members that such direct payments in no way reflect the discharge or satisfaction of any obligations that they may have to their lenders under their funding agreements. *Id.*[10] Thrivest itself acknowledges this. Br. at 11.

---

[10] Third-Party Funder Rules, Rule 1 (declaring that "[t]hese Rules do not address the enforceability of the underlying agreements between Third-Party Funders and Settlement Class Members," and that "[a]ny dispute over the enforceability or validity of a Third-Party Funder Transaction must be litigated or arbitrated in an appropriate forum outside of the claims administration context, subject to 'the full array of standard contract defenses' available") (quoting this Court's Apr. 26, 2019 decision) (3JA788); Third-Party Funder Rules, Title III preamble (declaring that payments made directly to Class members have "no bearing whatsoever on the Settlement Class Member's potential legal obligations. For instance, Settlement Class Members receiving such direct payments might be sued by a Third-Party Funder. A Settlement Class Member SHOULD NOT assume that his/her receipt of direct payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.") (3JA791) (boldface omitted).

**F.    Thrivest's Motion to Amend the Third-Party Funder Rules and Second Mandamus Petition**

Dissatisfied that the Third-Party Funder Rules do not, in its view, sufficiently facilitate its efforts to recoup cash advances from Class member borrowers, Thrivest filed a motion to amend those rules on June 28, 2021 (3JA758-919), to which Class Counsel responded on July 19, 2021 (3JA920-31), and the briefing of which concluded with the filing of Thrivest's reply on July 29, 2021.  ECF No. 11448; 3JA714 (docket entry).

Although barely four months passed after briefing concluded on its motion, Thrivest filed a second mandamus petition in this Court, complaining of the delay.  *In re Thrivest Specialty Funding LLC*, No. 21-3238 (3d Cir. Dec. 2, 2021) (ECF No. 1-1).  Class Counsel answered that petition on December 16, 2021, arguing there had been no unreasonable delay in Judge Brody's consideration of the motion and that Thrivest had failed to establish either irreparable harm or clear entitlement to the underlying relief it sought.  3JA1021-71.  On January 3, 2022, the Court denied Thrivest's petition without prejudice.  *In re Thrivest Specialty Funding LLC*, No. 21-3238 (3d Cir. Jan. 3, 2022) (ECF No. 9-1).

## G.    The District Court's Decision

The district court issued its Order on Thrivest's motion on July 18, 2022.  1JA1-3.  It began by distilling the Third-Party Funder Rules as providing that, "in cases where a Class Member either (1) fails to reach a resolution with the funder through the Resolution Protocol, or (2) has entered a funding agreement with an entity not participating in the Resolution Protocol, the Claims Administrator is to disburse the Monetary Claim directly to the Class Member, from whom the funder can then seek repayment."  1JA1 (citing Third-Party Funder Rules 1.6(a), 7(a)).  In addition, the district court noted that, in keeping with this Court's 2019 decision, "'any subsequent disputes between the Settlement Class Member and any Third-Party Funders must be litigated or arbitrated in an appropriate forum outside the claims administration process.'" 1JA1-2 (quoting *NFL Players' Concussion*, 923 F.3d at 113).

Continuing, the district court observed that this Court had expressed no view concerning the ultimate enforceability of any third-party funder cash advance, and that this Court's decision had "merely preserved [Thrivest's] ability to assert [its] rights on a case-by-case basis." 1JA2.  Judge Brody further noted this Court's holding that

Thrivest's "'contract gave it only the right to receive settlement funds *after* the funds are disbursed to a class member, and the District Court's power over the funds and the class ends at that point.'" *Id.* (quoting *NFL Players' Concussion*, 923 F.3d at 112) (emphasis added).

Given this, the district court concluded that "[t]he validity of [Thrivest's] agreements is … a post-disbursement matter to be considered by another appropriate forum, and there is no prejudice to [Thrivest] in requiring it to 'pursue … whatever rights they may continue to have under their cash advance agreements' in that way." 1JA2-3 (quoting *NFL Players' Concussion*, 923 F.3d at 113). Judge Brody further concluded that the Rules' provisions that Monetary Awards be paid directly to Class members in cases where the Resolution Protocol does not operate and that parties be advised of "their rights to bring subsequent disputes in the appropriate independent forum" are consistent with this Court's decision. 1JA3. Accordingly, the district court denied Thrivest's motion. *Id.* On July 27, 2022, Thrivest filed a timely Notice of Appeal from the district court's decision. 1JA4.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's denial of Thrivest's motion to amend the Third-Party Funder Rules. The Rules fully comport with this Court's 2019 decision. They leave the validity of cash advance agreements to be determined outside the Settlement's claims administration process. What is more, the Third-Party Funder Rules expressly caution Class members that, if they have entered into a cash advance agreement, direct payment to them of their Monetary Awards does not relieve them of legal obligations they may have to their lenders.

Contrary to Thrivest's contention, this Court did not pass on the validity of either its or any other third-party funder's cash advance agreements. Nor did this Court suggest that Class members should not be paid their Monetary Awards directly if they have entered into a cash advance agreement. Rather, this Court simply sustained the right of third-party funders to enforce their agreements in an appropriate judicial or arbitral forum. The Third-Party Funder Rules allow precisely that, and by its own account Thrivest has been pursuing its avenues of redress. Furthermore, the district court was not obligated to adopt a Monetary

Award payment scheme that is most advantageous to third-party funders' efforts to secure repayment.

Finally, far from thwarting Thrivest's collection efforts, the district court has not countenanced Class members' shirking of their undertakings to Thrivest and has exercised its authority, including its contempt power, to assist Thrivest in its efforts to obtain repayment from recalcitrant Class member borrowers. It is not obligated to do more.

## STANDARD OF REVIEW

"'This court applies plenary review to a district court's construction of settlement agreements, but [it] should review a district court's interpretation of settlement agreements, as well as any underlying factual findings, for clear error, as it would in reviewing a district court's treatment of any other contract.'" *NFL Players' Concussion*, 923 F.3d at 107 n.8 (quoting *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 269 (3d Cir. 2002)); *accord In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prods. Liab. Litig.*, 706 F.3d 217, 223 n.4 (3d Cir. 2013) ("We apply plenary review to a district court's construction of settlement agreements, but we review any underlying factual findings for clear error.") (citing cases; internal quotation marks omitted). "Clear

error is a deferential standard of review." *NFL Players' Concussion*, 962 F.3d 94, 101 (3d Cir. 2020).

This Court reviews the district court's "exercise of its 'authority to administer and implement a class action settlement for abuse of discretion.'" *Id.* (quoting *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 543 F.3d 179, 184 n.10 (3d Cir. 2008)). "An abuse of discretion occurs when a court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact or when no reasonable person would adopt the district court's view." *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 858 F.3d 787, 792 n.22 (3d Cir. 2017) (citation and internal quotation marks omitted); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006) ("[F]or us to find an abuse of discretion the District Court's decision must rest on 'a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'") (citation and internal quotation marks omitted).

## ARGUMENT

## THE COURT SHOULD AFFIRM THE DISTRICT COURT'S ORDER DENYING THRIVEST'S MOTION TO AMEND THE THIRD-PARTY FUNDER RULES BECAUSE THE DISTRICT COURT HAS ADHERED TO THIS COURT'S MANDATE

Thrivest fails to demonstrate any genuine basis for overturning the district court's Order denying its motion to amend the Third-Party Funder Rules.    That Thrivest is frustrated over the district court's disinclination to serve, in essence, as its adjunct in collection efforts to secure repayment of its loans from some recalcitrant Class members does not mean that the district court has failed to carry out this Court's mandate following its April 2019 decision or that it abused its discretion in any way.

## A.    The Third-Party Funder Rules Do Not Treat Funders' Cash Advances as Presumed Assignments

This appeal is predicated on several flawed assumptions.  To begin with, Thrivest contends that the district court and the Claims Administrator continue to treat funders' loan advances to Class members as assignments.  Br. at 24.  Not so.

The Third-Party Funder Rules that Thrivest wants this Court to order the district court to rewrite fully comply with the Court's mandate. Under those Rules, *no* determination is made whether a funding

30

agreement is a prohibited assignment, and no distinction is made at any juncture between those agreements that may be valid and those that are *de jure* invalid.  The Third-Party Funder Rules contain no presumption about the validity of borrowing arrangements.

Thrivest's contention that the Rules violate this Court's mandate is meritless.  *See* Br. at 21-22.  "While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939).  Thus, although it had to proceed in accordance with this Court's mandate, the district court remained "free to make any order or direction in further progress of the case, not inconsistent with [the Court's] decision ... as to any question not settled by the decision on remand."  *In re Chambers Dev. Co.*, 148 F.3d 214, 225 (3d Cir. 1998) (citation and internal quotation marks omitted).[11]

---

[11] *Accord In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (district courts must be free "to proceed both carefully and courageously in exercising their discretion" on remand) (citation and internal quotation marks omitted); *Habecker v. Clark Equip. Co.*, 942 F.2d 210, 217 (3d Cir. 1991) ("[A] district court ordinarily has substantial discretion in conducting further proceedings after a remand."); *Bankers Tr. Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 950 (3d Cir. 1985) ("A trial court is thereby free to make any order or direction in further progress of

Here, the Court did not suggest, let alone prescribe, how Monetary Awards should be paid where a Class member has entered into a cash advance agreement. Rather, it affirmed that the district court had the authority to void assignments, but that it did not have the related authority to void other obligations in the cash advance agreements, "particularly without affording the lenders notice and a hearing, or making specific findings that those obligations violated the [District] Court's prior orders or would impair the [District] Court's administration of the settlement." *NFL Players' Concussion*, 923 F.3d at 112. Thus, the district court acted well within the parameters set by this Court in declining to further alter the Monetary Award payment scheme to channel award monies directly to funders.

Thrivest maintains that there is no principled basis for the Third-Party Funder Rules' neutral approach to cash advance agreements because this Court already declared Thrivest's loan contracts not to be improper assignments. *See* Br. at 7. That, too, is inaccurate. Far from giving each and every one of Thrivest's lending agreements its seal of

---

the case, not inconsistent with the decision of the appellate court, as to any question not settled by the decision.").

approval, the Court "express[ed] no opinion as to the ultimate enforceability of any of the cash advance agreements." *NFL Players' Concussion*, 923 F.3d at 112. Noting that "many of the agreements contain arbitration provisions," the Court declared that the enforceability of the agreements and borrowers' defenses to them would need to "be litigated (or perhaps arbitrated) *on a case-by-case basis in an appropriate forum*." *Id.* (emphasis added). The Court did not hold, or even intimate, which funder's cash advance agreements passed (or would pass) muster.[12]

Thus, contrary to its contentions, the only right that Thrivest can be said to have as a result of this Court's mandate is the right to test the enforceability of its funding agreements before a court or arbitrator. This Court reached no conclusion as to any particular agreement before it, and

---

[12] Putting that inaccuracy aside, Thrivest's insistence that its funding agreements were not improper assignments is controverted by the very terms of at least one of its agreements. *See* ECF No. 9924-2 at 29 ("*Seller* has agreed to *assign and sell*, and *Buyer* has agreed *to acquire and purchase*, pursuant to the terms of this Agreement, *all rights, title, benefits, and interests of Seller* in and to the Distribution[.]") (emphasis added); *id.* at 31-34 (sections of agreement entitled "General Terms of the *Purchase and Sale*," "*Seller* Representations and Warranties," "Covenants of *Seller*," and "Breach by *Seller*") (emphasis added); 3JA588 (docket entry).

it expected that enforcement of funding agreements would play out through normal channels, such as through arbitration. The current Third-Party Funder Rules do nothing to impede Thrivest's right to do so. By its own account, it is doing that. Furthermore, when it obtains an arbitration award, Thrivest can turn to the district court to enforce it, which, in fact, it has done on several occasions. *See* Section C, *infra*. Thrivest obtained no right to funnel the payment of Monetary Awards in particular ways, and for its convenience. How Monetary Award funds are distributed is squarely within the district court's purview.

Although Thrivest contends that the Third-Party Funder Rules constitute an "unnecessary and inequitable exception to the typical flow of funds" where borrowers are represented by counsel (Br. at 29), the default mechanism that it would prefer—direct payment to the lender— would ignore what transpired in the Settlement Program and why the Third-Party Funder Rules were necessary in the first instance. As noted above, many Class members who entered into prohibited assignments were represented by individual counsel who either failed to review the Settlement Agreement (including its Anti-Assignment Provision) or who

helped steer their clients into improper assignment agreements. *See* 3JA930 (Decl. ¶ 4).

Thrivest argues that the Third-Party Funder Rules subject it to "disparate treatment, especially disparate treatment based on the existence of a valid, legal transaction." Br. at 24. Setting aside that *no* funder has a right to direct payment—so there is no "disparate treatment" here—that puts the proverbial cart before the horse. As noted above, this Court made *no determination* that *any* funder's—including Thrivest's—cash advance agreement is "valid" and "legal," and, if anything, record evidence calls into question the validity of at least one of Thrivest's cash advance agreements. *See supra* at 33 n.12. Thrivest apparently believes that this Court should simply take Thrivest's word for it—or rely on its representation that arbitrators to date have found certain of its cash advance agreements not to be improper assignments (Br. at 24)—and order the Third-Party Funder Rules to be rewritten to have them categorically presume that borrowing agreements do not run afoul of the Anti-Assignment Provision.

In short, the district court has acted within the scope of this Court's mandate in adopting a more benign, "hands-off" approach and allowing

direct payment of Monetary Awards to Class members in cases where a member discloses a cash advance agreement and the Resolution Protocol is not agreed to, thereby leaving it to funders to deal with their borrowers to obtain repayment.

**B.    That Thrivest Would Experience Less Inconvenience if Monetary Awards Are Not Paid Directly to Class Members Does Not Mean That the Third-Party Funder Rules Fail to Comport with This Court's Decision**

Although Thrivest thinks that it would be better if Monetary Awards were paid to the counsel of individually represented Class members (Br. at 27-29), the issue here is not whether the Third-Party Funder Rules are the *perfect* or *ideal* payment scheme from the perspective of third-party funders. Rather, the issue is whether the Rules are *permissible* under this Court's mandate. *See*, *e.g.*, *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1484 (Fed. Cir. 1998) (noting "the general rule that, following appellate disposition, a district court is free to take any action that is consistent with the appellate mandate, as informed by both the formal judgment issued by the court and the court's written opinion"). Notably, at no time did this Court declare that Thrivest or any other funder enjoys a right to have Monetary Award payments made a certain way.

36

The Third-Party Funder Rules represent the district court's balancing, on the one hand, its obligations as a fiduciary to Class members, by helping ensure that funders who lured them into improper assignments do not seize their Monetary Awards, and, on the other, its duty under this Court's decision to ensure that funders such as Thrivest are not thwarted in enforcing their legitimate rights, whether through judicial proceedings or arbitration, against recalcitrant borrowers. Thus, under the Third-Party Funder Rules all lenders who seek to enforce their funding agreements are treated the same, Thrivest among them.

Put another way, Thrivest's belief that payment of Monetary Awards to the individual counsel of represented Class members instead of directly to the members themselves would *better* guarantee that funders' legitimate cash advances are repaid (*see* Br. at 27-31) does not demonstrate that the district court acted improperly in approving the revised funder-related payment structure in the aftermath of this Court's decision.

Equally unavailing is Thrivest's lament that direct payment of Monetary Awards to Class members who have cash advance agreements with third-party funders has "undermined enforcement" of agreements

and encouraged noncompliance, with some borrowers squandering their awards without repaying their lenders.  Br. at 12, 25-27.  Thrivest asserts that the Third-Party Funder Rules' neutrality respecting borrowing arrangements therefore cannot be allowed to stand.  *Id.* at 28.

As a lender, Thrivest is in the very business of undertaking lending risks, and it presumably has set its significant interest rates accordingly. It should not be heard to complain about its risks.  That Thrivest has had to expend some effort and expense to pursue some recalcitrant borrowers, a few of whom squandered their Monetary Awards, does not a justify a usurpation of the district court's authority in overseeing the Settlement. This Court's April 2019 decision did not imply, let alone hold, that district court is obligated to serve as Thrivest's adjunct and ensure that its collection efforts are entirely risk-free, trouble-free, and cost-free.

Indeed, were the district court required, as Thrivest insists, to direct that payment of Monetary Awards bypass Class members who have entered into cash advance agreements, it is *that* scheme—not the current payment structure—that would treat those members' cash advances de facto as the assignments that this Court held Judge Brody

38

was correct to proscribe in the first place—which would be an ironic (if not illogical) result.[13]

In sum, there is no basis for Thrivest's effort to overturn the district court's supervision of mechanisms that the Claims Administrator adopted to regulate payments of Monetary Awards where a third-party funder is involved. Nothing in this Court's 2019 decision warrants it.

## C. The District Court Has Aided, Not Impeded, Thrivest's Efforts to Secure Repayment from Recalcitrant Class Member Borrowers

Thrivest further asserts that direct payment of Monetary Awards to class members has triggered "a flurry of frantic litigation activity" and burdened it with arbitration expenses and attorney's fees. Br. at 29. The reality with any loan, however, is that a lender must sometimes expend resources in order to collect from borrowers who fail to make good on their repayment obligations, and occasionally there is the risk that less than a full judgment or arbitration award will be collected upon.

---

[13] Thrivest suggests that the district court's neutrality represents a desire to force funders to submit to the Resolution Protocol and thereby accept a lower rate of return on their cash advances. Br. at 24-25, 28 n.6. That is rank speculation. Thrivest's right to enforce its rights under its funding agreements is unencumbered and it has no reason to submit to the Resolution Protocol.

Citing examples of two borrowers who dissipated their Monetary Awards and failed to repay it, Thrivest complains that it has had difficulty collecting from some Class members after it prevailed in arbitration to enforce its agreements.    Br. at 8-9, 12-19, 26.    Thrivest neglects, though, to properly credit the district court for having *supported* Thrivest's efforts to confirm and enforce such arbitration awards, including, where warranted, having resorted to its contempt power against Class member noncompliance. *E.g.*, *Thrivest Specialty Funding v. Wright*, No. 2:18-cv-04764 (E.D. Pa. Jan. 2, 2020) (ECF No. 75) (docket entry at 3JA818) (order confirming arbitrator's award, including attorneys' fees and expenses, and awarding post-judgment interest); *Thrivest Specialty Funding v. White*, No. 2:18-cv-01877 (E.D. Pa. Oct.17, 2019) (ECF No. 44) (docket entry at 3JA806) (entering contempt order after Class member White failed to comply with escrow order confirming arbitrator's interim award).[14]

Indeed, while fulfilling its obligation to act as a fiduciary to the Class and protecting members from prohibited assignments, at the same

---

[14] Thrivest acknowledges that Class member White subsequently satisfied an arbitrator's final award.  *See* Br. at 9.

time the district court has not countenanced members' evasion of their legal obligations to funders such as Thrivest.  As it proceeds in its arbitration of funding disputes with Class members (assuming that there are others besides those whom Thrivest mentions in its brief), Thrivest will no doubt continue to count on the assistance of the district court or other courts[15] in enforcing the awards it obtains.

What Thrivest overlooks is that this Court's decision sustained the right of third-party funders such as itself to seek arbitration or judicial redress to enforce their lending agreements.  It gave Thrivest no greater right than that, and this Court certainly did not imply that the district court was under a duty to implement a Monetary Award payment scheme most advantageous and trouble-free to funders.  The district court cannot be faulted because some Class members have failed to honor arbitrators' awards or judges' orders confirming those awards.  *See* Br. at 18-19.

---

[15] Besides the district court presiding over *NFL Players' Concussion*, Thrivest has also successfully sought enforcement relief from other courts. S*ee Balanced Bridge Funding, LLC v. Harper*, No. 20-6525, 2021 WL 3027018, at *1 (E.D. Pa. Feb. 23, 2021) (granting emergency application to confirm $491,623.20 arbitration award against Class member who failed to repay Thrivest or to hold proceeds from his Monetary Award in trust).

Nor are the Third-Party Funder Rules infirm because Thrivest, feigning concern for Class members' welfare, believes that the district court must guard against members squandering their Monetary Awards and bringing financial harm upon themselves and their families. *See* Br. at 30. The district court has acted in furtherance of its fiduciary duty to the Class by protecting members from predatory lenders, while also acceding to Thrivest's entreaties to exercise its authority against Class members shirking their lawful obligations to those from whom they obtained cash advances against their Monetary Awards. At the end of the day, however, neither Judge Brody nor this Court has a duty to take matters further and ensure that Class members are protected from themselves.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's Order.

**Dated:**  November 9, 2022

                                                Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
(NY 2425304)
(NJ 042631990)
Diogenes P. Kekatos
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07760
(973) 639-9100
cseeger@seegerweiss.com
dkekatos@seegerweiss.com

    Scott Alan George
    **SEEGER WEISS LLP**
    1515 Market Street, Suite 1380
    Philadelphia, PA 19102
    (215) 564-2300
    sgeorge@seegerweiss.com

***Class Counsel for the Plaintiff Settlement Class and Attorneys for Plaintiffs-Appellees Shawn Wooden and Paul Raymond Turner***

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned hereby certifies that:

1.     This brief complies with the type-volume limitations prescribed in Federal Rule of Appellate Procedure 32(a)(7)(B)(i).   As measured by the word processing system used to prepare this brief, Microsoft Word 2019, there are 8,443 words in the brief, exclusive of items listed in Rule 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface (Century Schoolbook 14 point) using Microsoft Word 2019.

Dated:  November 9, 2022

*/s/ Christopher A. Seeger*
Christopher A. Seeger
(NY 2425304; NJ 042631990)

**CERTIFICATE OF BAR MEMBERSHIP**

Pursuant to Third Circuit L.A.R. 28.3(d), I certify that I am a member of the Bar of this Court.

**CERTIFICATE OF VIRUS SCAN**

I certify, pursuant to Third Circuit L.A.R. 31.1(c), that a virus detection program has been run on this file and that no virus was detected.  The virus detection programs utilized were Malwarebytes Premium, version 4.5.17.221, and Norton 360, version 22.22.9.11.

**CERTIFICATE OF IDENTITY BETWEEN
ELECTRONIC AND PAPER COPIES**

I certify, pursuant to Third Circuit L.A.R. 31.1(c), that the text of the electronic (.pdf) version of this brief is identical to the text in the paper copies thereof.

Dated:  November 9, 2022

*/s/ Christopher A. Seeger*
Christopher A. Seeger
(NY 2425304; NJ 042631990)

## CERTIFICATE OF SERVICE

I certify that on this date I caused the foregoing Brief for Class Plaintiffs-Appellees to be electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Third Circuit using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  November 9, 2022

*/s/ Christopher A. Seeger*
Christopher A. Seeger
(NY 2425304; NJ 0426311990)