IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-2381
_____

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION

THRIVEST SPECIALTY FUNDING LLC,

                                                                Appellant

_____

On Appeal from July 18, 2022 Order of the
U.S.D.C. Eastern District of Pennsylvania
Civil Action No. 2:12-md-02323

_____

**REPLY BRIEF OF APPELLANT
THRIVEST SPECIALTY FUNDING, LLC
n/k/a BALANCED BRIDGE FUNDING, LLC**

_____

                            Peter C. Buckley
                            pbuckley@foxrothschild.com
                            FOX ROTHSCHILD LLP
                            2000 Market Street, 20th Floor
                            Philadelphia, PA 19103
                            Tel: (215) 299-2854
                            Fax: (215) 299-2150

                            *Attorney for Appellant*
                            *Thrivest Specialty Funding, LLC*
                            *n/k/a Balanced Bridge Funding, LLC*

# **TABLE OF CONTENTS**

ARGUMENT ................................................................................................1

    A.    Requiring Direct Payment To Class Members Under The Funder Rules Is A "Back Door" Attempt To Regulate Cash Advance Agreements That Exceeds The District Court's Jurisdiction Under The All Writs Act And Violates This Court's Mandate ........................................2

    B.    Thrivest Seeks Only To Eliminate The Affirmative Disadvantage In The Funder Rules, Not Special Treatment ..............................................................................6

    C.    The District Court's Reluctance To Enforce Thrivest's Contractual Rights Has Caused Prejudicial Delays. .............9

CONCLUSION .........................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Nat'l Football League Players Concussion Inj. Litig.,
　923 F.3d 96 (3d Cir. 2019) ............................................................. 3, 4, 5

United States v. N.Y. Tel. Co.,
　434 U.S. 159 (1977) ................................................................................ 3

**Statutes**

28 U.S.C. § 1651 ............................................................................................ 3


**Other Authorities**

Fed. R. Civ. P. 9 ............................................................................................ 6

Fed. R. Civ. P. 23 ..................................................................................... 3, 4

## ARGUMENT

This appeal presents an important question regarding the limits of a district court's authority over third parties in connection with the administration of a class action settlement. This Court previously rejected the District Court's approach to third-party cash advance agreements, and this appeal concerns the District Court's attempt to achieve the same flawed outcome through different means—a violation of the letter and spirit of this Court's mandate.

Class Counsel relies on a parade of misplaced *ad hominems* but does not explain how the District Court's authority—to enforce an order prohibiting "true assignments" of rights or claims in the class action—gives the District Court jurisdiction to regulate cash advance agreements that this Court has said do <u>not</u> violate the "true assignment" prohibition. The District Court cannot achieve through a back door what this Court denied through the front. Yet that is precisely what Class Counsel defends. After this Court held that the District Court improperly invalidated Thrivest's cash advance agreements, the District Court once again exceeded its jurisdiction—and this Court's mandate—by manipulating the ordinary flow of Monetary Awards, first, to incentivize

third-party funders to rewrite their existing agreements in exchange for the Claims Administrator paying them directly and, then, to punish those who refused its "Resolution Protocol" with increased collection risk by diverting Monetary Awards around the attorneys of record. Class Counsel argues that Thrivest is seeking special treatment, but in reality Thrivest seeks only to eliminate the affirmative disadvantage wrought by the District Court's "Funder Rules"—a regulatory framework for third-party financial transactions that goes far beyond the minimum necessary to enforce the Court's prior order prohibiting assignments and, indeed, contravenes this Court's mandate.

*Ad hominem* reasoning makes bad law; this Court should reverse.

### A. Requiring Direct Payment To Class Members Under The Funder Rules Is A "Back Door" Attempt To Regulate Cash Advance Agreements That Exceeds The District Court's Jurisdiction Under The All Writs Act And Violates This Court's Mandate.

Class Counsel misstates this Court's prior decision when it asserts that the Third Circuit "held that the All Writs Act allowed the district court to exercise [its broad jurisdiction to administer the settlement] vis-à-vis third parties such as the funders." (Brief of Appellee, p. 15). On the contrary, this Court recognized only limited authority over third parties,

explaining that "under the All Writs Act, action is authorized to the extent it is 'necessary or appropriate' to enforce a Court's prior orders." Nat'l Football League Players Concussion Inj. Litig., 923 F.3d 96, 109 (3d Cir. 2019) (citing 28 U.S.C. § 1651 and United States v. N.Y. Tel. Co., 434 U.S. 159, 172 (1977)). Of significance, this Court also stated that "any remedy under Rule 23(d) 'should be restricted to the *minimum necessary* to correct the effects of improper conduct under Rule 23.'" Id. (emphasis added). The District Court was instructed to give "explicit consideration to the *narrowest possible relief* which would protect the respective parties." Id. (emphasis added). The District Court's Funder Rules ignore these limitations to thwart this Court's mandate and impose a robust regulatory framework designed to reshape financial transactions over which the Court lacks jurisdiction.

The parties agree that the District Court has authority to enforce its prior order prohibiting "true assignments" of rights or claims in the class action. However, as Class Counsel recognizes, the Funder Rules apply "whenever a Class member discloses a cash advance agreement *of any kind* and the Resolution Protocol is not pursued." (Brief of Appellee, p. 22) (emphasis added). In Class Counsel's words, "under the Third-

Party Funder Rules[,] all lenders who seek to enforce their funding agreements are treated the same, Thrivest among them[;] *no* determination is made whether a funding agreement is a prohibited assignment and no distinction is made at any juncture between those agreements that may be valid and those that are *de jure* invalid." Id. at 30-31, 37 (emphasis in original).  Put simply, under the guise of enforcing compliance with its prior order prohibiting assignments, the District Court is in reality regulating all financial transactions with Class Members—even cash advances that comply with the anti-assignment order.

The District Court's Funder Rules go far beyond what is "necessary or appropriate" to enforce its prior order, exceeding the District Court's jurisdiction under Rule 23 by failing to limit the remedial action "to the *minimum necessary* to correct the effects of improper conduct" and by not giving "consideration to the *narrowest possible relief* which would protect the respective parties." Nat'l Football League Players Concussion Inj. Litig., 923 F.3d at 109 (emphasis added).  If a district court's regulation of third parties need not be tied to enforcement of a prior order, there is no limit on the scope of judge-made regulations that might issue.  What's

more, by applying the Funder Rules to Thrivest, the District Court has directly contravened this Court's mandate, which included a specific finding that Thrivest's contract was not a prohibited "true assignment."[1] Id. at 112-113. If a mandate is to mean anything, it must be enforced—especially against a creative work-around.

Thrivest did not violate the District Court's anti-assignment order, and so there is no basis to regulate Thrivest's contractual relationships. Nevertheless, through the Funder Rules, the District Court has attempted to rewrite the contractual and financial terms of Thrivest's agreements, offering a secured payment incentive to accept its "Resolution Protocol" and punishing Thrivest for seeking to enforce its agreements as written by circumventing the safeguards available when

---

[1] Class Counsel asserts that "[t]his Court reached no conclusion as to any particular agreement before it," arguing in a footnote that "Thrivest's insistence that its funding agreements were not improper assignments is controverted by the very terms of at least one of its agreements." (Brief of Appellee, p. 33). This argument ignores the Third Circuit's review of Thrivest's contract in connection with the prior appeal and this Court's specific determination that "[u]nder all of the agreements relevant to this appeal, class members expressly did not assign their legal claims against the NFL, nor did the funding companies acquire the right to assert legal claims." Nat'l Football League Players Concussion Inj. Litig., 923 F.3d at 101-102.

funds flow through the attorneys of record.[2] Consistent with its reversal of the District Court's blanket nullification order, this Court should reject this "back door" attempt to continue regulating Thrivest's cash advance agreements by altering the flow of Monetary Awards.

### B. Thrivest Seeks Only To Eliminate The Affirmative Disadvantage In The Funder Rules, Not Special Treatment.

Class Counsel suggests that the District Court has employed a "neutral approach to cash advance agreements" that is "benign" and "hands-off," while arguing that Thrivest has urged "judicial micromanagement of the Settlement Program" and for the Court to "funnel" money its way as an "adjunct in collection efforts." (Brief of Appellee, pp. 5, 30, 32, 34-35). None of these labels fits.

The five pages of single-spaced Funder Rules are anything but "hands-off," and Thrivest's Opening Brief details how "Rule 9" has prejudiced enforcement of its contractual rights—creating an exception

---

[2] Class Counsel argues that direct payment to Class Members under the Funder Rules "protects Class members whose counsel have often shown themselves to be less than zealous in guarding their clients' interests when it comes to cash advance agreements structured as prohibited assignment and sale agreements." (Brief of Appellee, p. 23). But this Court has held that Thrivest's agreement is not a prohibited assignment and sale agreement, and so the logic of Class Counsel's position and the District Court's Funder Rules are equally circular.

to the ordinary flow of Monetary Awards by directing the Claims Administrator to circumvent the attorney of record when paying a Class Member that has entered into a "Third-Party Funder Transaction."[3] The Funder Rules are *de facto* undermining Thrivest's ability to enforce its agreements; they are in no way "neutral."

As for the relief sought here, Class Counsel attacks a strawman argument. Contrary to Class Counsel's unfounded assertions, Thrivest is not asking that the Claims Administrator "channel award monies directly to funders" or require "direct payment to the lender." (Brief of

---

[3] The very definition of "Third-Party Funder Transaction" in the Funder Rules demonstrates the overbreadth of the District Court's regulatory scheme:

> "Third-Party Funder Transaction" means ***any*** agreement, contract, document, or arrangement between a Settlement Class Member and a third party under which: (i) the Settlement Class Member borrowed or received funds from a third party prior to receipt of a Monetary Award from the Settlement Program; and (ii) in exchange, either assigned/attempted to assign any rights related to the Settlement Class Member Monetary Award or Monetary Claim. ***This definition is meant to be construed broadly***, so as to cover ***all potential cash advance agreements*** where a third-party entity loans or advances funds in exchange for rights to receive payment from the proceeds of any future Monetary Award, or in exchange for rights to "step into the shoes of" the Settlement Class Member and "seek funds directly from" the Settlement Program.

(JA789) (emphasis added).

Appellee, pp. 32, 34). Thrivest's motion sought only to eliminate the Funder Rules' exception to the ordinary flow of funds and for all Monetary Awards to flow through the attorneys of record—except where the Class Member is *pro se* or if a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement. Such relief would eliminate an affirmative disadvantage, but it would not afford Thrivest any special advantage in enforcing its contractual rights.

Of course, Class Counsel employs other misplaced labels—"predatory lender," among them—in seeking to justify the District Court's regulatory overreach. (Brief of Appellee, p. 12). But whatever value these aspersions would have against other entities, none can be properly thrown in Thrivest's direction. Indeed, Thrivest has successfully enforced its contractual rights in each and every instance they have been challenged, including before this Court. It is beyond the scope of this appeal to justify Thrivest's *bona fides*, but it is worthy of note that Thrivest provided among the lowest cost of funds among third-party funders in the class action and that its advances provided Class

Members with important non-recourse liquidity as they waited for their claims to wind through the sometimes-lengthy claims administration process.

### C. The District Court's Reluctance To Enforce Thrivest's Contractual Rights Has Caused Prejudicial Delays.

Class Counsel touts the District Court as "having *supported* Thrivest's efforts to confirm and enforce [its] arbitration awards"; however, Class Counsel overlooks the dissipation that occurred during significant delays in the enforcement process. (Brief of Appellee, p. 40) (emphasis in original).

In Thrivest v. Wright, for example, the District Court took 40 days—from July 3 to August 12, 2019—to confirm the Emergency Arbitrator's Interim Award of Emergency Relief, which directed Mr. Wright to escrow his Monetary Award pending a decision on the merits. (JA813-815). During that time period, Mr. Wright dissipated $166,513.34 as Thrivest waited for the District Court to confirm the arbitrator's emergency award as an enforceable order. (JA822-897). Then, Thrivest waited another 70 days (until October 21, 2019) for the District Court to hold Mr. Wright in contempt for failing to follow through

on the escrow directive.[4] (JA815-818). Mr. Wright dissipated another $98,344.42 during this delay. (JA822-897). In Thrivest v. Harper, the District Court held Thrivest's emergency application to confirm another Emergency Arbitrator's Interim Award of Emergency Relief for 30 days before asking that the case be reassigned to another judge. (JA903-904). During this period, Mr. Harper dissipated more than $350,000 from his accounts. (JA904-905).

Although the District Court ultimately ruled in Thrivest's favor, these long delays on emergent matters coincided with real prejudice to Thrivest's enforcement efforts—tacitly punishing Thrivest for refusing to renegotiate its contracts under the Resolution Protocol. What's more, the dissipation that occurred while Thrivest waited spawned several ancillary legal proceedings, burdening Thrivest and other courts with further litigation that would have been avoided if the Monetary Awards flowed through the attorneys of record. As the maxim goes, justice delayed is justice denied.

---

[4] Although Thrivest ultimately received payment from Mr. White, the District Court waited 108 days following its July 1, 2019 Order confirming the Emergency Arbitrator's Interim Award of Emergency Relief before holding Mr. White in contempt for violating it. (JA804-806).

## CONCLUSION

This is an appeal about adherence to this Court's earlier mandate, but the scope of this appeal goes beyond the specifics of this case. It presents fundamental questions about a district court's authority to regulate non-parties. Is that authority inherently limited to what is necessary to enforce the court's orders? Or does the court's authority reach beyond—as here, empowering a court to rewrite private contracts and substitute its own views for market forces? Thrivest respectfully asks that the Court look past Class Counsel's long list of pejoratives to see the real effect of the District Court's actions. There is a simple fix: eliminate the affirmative disadvantage created by circumventing the attorneys of record when paying Monetary Awards to Class Members. This Court has already rejected the starting point of the District Court's regulatory scheme. Consistent with its earlier mandate, this Court should reverse the District Court's decision and order payment of Monetary Awards directly to Settlement Class Members <u>only if</u> the Class Member is *pro se* or if a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement.

-12-

Date: November 29, 2022  Respectfully submitted,

  */s/ Peter C. Buckley*
Peter C. Buckley (PA I.D. No. 93123)
pbuckley@foxrothschild.com
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 299-2854
Facsimile: (215) 299-2150

*Attorney for Appellant,*
*Thrivest Specialty Funding, LLC*
*n/k/a Balanced Bridge Funding, LLC*

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(A) and the Local Rules of this Court, the undersigned hereby certifies that the foregoing Reply Brief of Appellant complies with the page limitation set forth in the above-referenced rules. Exclusive of the exempted portions under Fed. R. App. P. 32(f), the foregoing Reply Brief of Appellant contains 11 pages.

The undersigned further certifies that this document has been prepared in a proportionally-spaced typeface using Microsoft Word in Century Schoolbook 14 point. The text of the electronic brief is identical to the text in the paper copies. Carbon Black Defense, a virus detection program, has been run on the electronic brief, and no virus was detected.

*/s/ Peter C. Buckley*
Peter C. Buckley (PA I.D. No. 93123)

## **CERTIFICATE OF SERVICE**

Pursuant to Fed. R. App. P. 31(a)(1), and the Local Rules of this Court, the undersigned hereby certifies that the foregoing Reply Brief of Appellant was served this 29th day of November, 2022 upon counsel for all parties through this Court's electronic filing system.

*/s/ Peter C. Buckley*
Peter C. Buckley (PA I.D. No. 93123)